**BAILEY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 9016.**

Circuit Court of Appeals, Fifth Circuit.

April 26, 1939.

William R. Watkins, of Fort Worth, Tex., for petitioners.

Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., Jas. W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The taxpayers, Wm. J. Bailey and wife, have a community estate under Texas law. The husband as manager, in whose name the transactions were conducted, need alone be mentioned hereafter. He returned for income taxation in the year 1933 a profitable sale of land which had on March 8, 1924, been consummated by his making a deed and taking four negotiable notes for a principal of $15,500 each, due in four, five, six, and seven years, with interest from date at seven per cent payable annually. The buyer was Mount Olivet Cemetery Company, a corporation wholly controlled and over eighty per cent owned by himself. The Commissioner included the entire profit of $59,000 as a gain realized in 1933. Bailey contended before the Board of Tax Appeals that the gain was realized in instalments as the several notes matured, inasmuch as on each occasion he was owing the Company for money advanced an amount greater than the matured notes. The Board found that the taxpayer on a cash receipts basis had received payment in full in 1933. This conclusion is attacked as without foundation in the law and evidence.

The gain has concededly been realized, and has not been otherwise accounted for in the taxpayer's returns. The question is to what year or years it is to be referred on a cash receipts basis. Not the year 1924, for nothing was received then save notes, and no fair value has been asserted or proven for them. The taxpayer returned three of them as paid December 31, 1933, and his own books so show. The books of his corporation, whose entries were under his supervision and with knowledge of which in the absence of proof to the contrary he may fairly be charged, show that all four notes were then paid. The mode of payment indicated by the books was a charging of the notes out of the respective bills receivable and bills payable accounts, and charging them into a running account of the Cemetery Company against Bailey which was carried on his books under the head "Mount Olivet Cemetery Company Loans," and on its books as "William J. Bailey Loans." The natural meaning of these book entries is that it being found on December 31, 1933, that Bailey held overdue notes of $62,000 principal against the Company, and that the Company had a balance on account against Bailey of $95,952,

the one was offset against the other, leaving a balance on the account of $13,952. That such a transaction happened is also indicated by the tax return which avers payment in 1933 of three of the notes. Bailey's books, to be sure, indicate that only three were thus dealt with on December 31, 1933, and the fourth note is not charged out on his books until September, 1934; but as between the two sets of books, since neither Bailey nor the bookkeeper makes any explanation, the Board could find the truth to be with the Company's books.

Bailey's legal contention is that the notes should be taken as constructively paid at their several maturities because the loan account at each maturity showed more than enough balance to extinguish all matured notes. The account began long before any note matured, and was over $50,000 when the first fell due. Bailey was charged in the account with all the cash he received, and with seven per cent interest on his annual balances. He was credited each year with the annual interest on the notes he held. The accounts which carried the notes showed no credits on them. Evidently what money was paid to Bailey was not tendered and received as payments on the notes, but as an independent seven per cent loan. A payment does not occur unless "the money passes from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose." 21 R.C.L. Payment, § 3. "Mutual debts do not per se extinguish each other." 21 R.C.L. Payments, § 42. Here apparently the purpose was to keep the notes unpaid, and to carry the cash advances as a loan. This was in the power of the parties. It may be true, as is argued, that if this were done to defeat a proper taxation the United States could have forced a set off in prior years, or applied the doctrine of constructive payment. It is certain that if Bailey or the Company had sued the other a set off could have been forced by either. Vernon's Revised Civil Statutes of Texas, § 2015. But we think that an automatic set off cannot be claimed. Whatever the purpose of not paying the notes, that purpose existed, and the taxpayer in each of the years from 1928 through 1931 did not return any note as paid at maturity but in 1933 returned three of them as paid. The Commissioner has acquiesced. Bailey is in no position to shift his ground. He is disappointed in not

sustaining some deductions he claimed on his 1933 return, but that does not authorize the shift. The set off operates as though he had paid his company $62,000 on account and it had paid him back the money on the notes. Though on a cash receipts basis, he thus received payment in 1933. The decision of the Board is affirmed.