## ACER REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12350.

Circuit Court of Appeals, Eighth Circuit.

Dec. 28, 1942.

Gus O. Nations, of St. Louis, Mo. (R. Shad Bennett, of Clayton, Mo., and Nations & Nations, of St. Louis, Mo., on the brief), for petitioner.

S. Dee Hanson, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Willard H. Pedrick, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case is presented here on a petition of the taxpayer to review a decision of the United States Board of Tax Appeals redetermining, and modifying and confirming a deficiency in petitioner's in-come taxes for the taxable years ended January 31, 1936, 1937, and 1938. The modifications made by the Board were favorable to the petitioner, and the Commissioner has not excepted. The opinion of the Board is reported in 45 B.T.A. 333.

The deficiency found by the Commissioner and in controversy here involves two items of the petitioner's income tax returns for the taxable years. First, petitioner claimed deductions for salary paid its president for the years 1936, 1937, and 1938 of $10,075, $9,750, and $11,700 respectively, and for salary paid to its secretary-treasurer for the same years of $1,550, $1,650, and $1,800. The Commissioner allowed deductions for the president's salary in the amount only of $1,200 for each year and for that of the secretary-treasurer in the amount of $600 a year. Second, the Commissioner added to the petitioner's reported income for the year 1938 the sum of $8,700 as rentals constructively received in that year.

In disallowing the deductions claimed for officers' salaries the Commissioner stated in his notice of deficiency that the amounts claimed are held to the extent of the amounts disallowed "to be in excess of reasonable allowances for salaries or other compensation for personal services actually rendered."

In affirming the Commissioner the Board held that the payments to officers and disallowed "were not made as compensation of these two officers, as such. They were made for unusual, nonrecurrent services, the cost of which is represented now in the value of the capital assets thus acquired and now owned by petitioner."

The petitioner complains in substance that the Board erred in deciding the controversy as.to deductions for salaries on a factual basis not framed by the pleadings or referred to in the evidence; and that the sole issue of fact raised by the pleadings was whether the services rendered by the officers to the corporation were worth the total amount paid for them. Consequently, it is urged, the Board had no jurisdiction to go outside of that issue and determine the case upon the question of the essential character of the services rendered.

On this question there is no merit in petitioner's contention. The Board went no further than to find the facts and to apply the law to those facts. The Commissioner introduced no evidence at the

hearing before the Board, and the testimony introduced by the petitioner abundantly supports its findings.

In brief the facts are that the petitioner is a corporation, the capital stock of which is owned almost wholly by the parties who were its president and secretary-treasurer respectively during the taxable years. The business of the corporation is chiefly the holding of title to approximately 50 acres of land in St. Louis County, Missouri, and leasing it to the Glenwood Sanatorium Company, a corporation owned also by the same parties who were the officers of the petitioner. A large building program consisting of the construction of buildings for the use of the tenant Sanatorium Company was carried through during the years 1933 to 1938 inclusive. Instead of having the work done by contractors the officers whose salaries are involved performed all the services necessary to the management of the construction of the buildings. The savings to the petitioner on the building program thus effected were in excess of $100,000. The petitioner's evidence shows that the president's services alone for this character of work were worth $12,000 a year for the four-year period, and that the secretary-treasurer's services for the same class of work were worth approximately one-sixth as much. No evidence was produced to show the value of the officers' salaries as such.

Except for the period from July, 1930, to July, 1932, the officers never at any time drew salaries until June 1, 1934, on which date the president was voted a salary of $325 a month and the secretary-treasurer a salary of $50 a month. On February 1, 1935, these salaries were increased to $650 and $100 a month respectively. On August 1, 1935, they were again increased to $975 and $150 a month respectively, and they remained at these amounts until February 1, 1938, when the building program was completed.

■ The substantive rights of the government and of the petitioner are controlled by §§ 22(a) and 23(a) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code §§ 22(a) and 23(a). Under the statute deductions for corporate salaries can be allowed only when such payments constitute "ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." A capital expenditure is not deductible as an "ordinary" business expense. It is well-settled that money paid out for the acquirement of something of permanent use or value in one's business is a capital investment and not deductible from income as an "ordinary" business expense. Duffy v. Central Railroad Company, 268 U.S. 55, 45 S.Ct. 429, 69 L.Ed. 846; Willcuts v. Minnesota Tribune Co., 8 Cir., 103 F.2d 947, 950, certiorari denied 308 U.S. 577, 60 S.Ct. 93, 84 L.Ed. 483; Houston Natural Gas Corp. v. Commissioner of Internal Revenue, 4 Cir., 90 F.2d 814, 816; Great Northern Ry. Co. v. Commissioner of Internal Revenue, 8 Cir., 40 F.2d 372. This rule of law is not controverted by the petitioner. It argues that the character of the services rendered by its officers was not in issue, only their value.

■■ On this issue we agree with the Board that petitioner is mistaken. Under the statute, supra, there could be but one question, namely, whether the payments represented reasonable allowances for services performed *in carrying on* the business of the corporation. If the salaries were in part paid for other services they were not ordinary expenses. When petitioner appealed to the Board and challenged the decision of the Commissioner, it took upon itself the burden of establishing its contention that the payments were not only reasonable in amount but also that they were ordinary and necessary in carrying on its business. Instead of sustaining that burden its proof affirmatively showed that the expenditures were not ordinary and necessary expenses paid or incurred in carrying on its business but, on the other hand, that they were in large part, if not entirely, capital investments.

■ In an appeal to the Board the burden is upon the taxpayer "to show that it was entitled to the deduction which the Commissioner had disallowed, and that the additional tax was to that extent illegally assessed." Reinecke v. Spalding, 280 U.S. 227, 233, 50 S.Ct. 96, 98, 74 L.Ed. 385. The taxpayer must show that the assessment is wrong upon any proper theory. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224. Upon appeal the Board "may investigate anew the issues between the government and the taxpayer, and upon the determination of the appeal it may affirm, set aside, or modify the findings and decision of the Commissioner." Blair v. Oesterlein Co., 275 U.S. 220, 227, 48 S.Ct. 87, 89, 72 L.Ed. 249. Neither the Board nor this court is bound by the rea-

son assigned by the Commissioner for his decision. If the disallowance is right it must be affirmed by the application of the correct rule of law. Helvering v. Gowran, supra; Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; J. & O. Altschul Tobacco Co. v. Commissioner of Internal Revenue, 5 Cir., 42 F.2d 609, 610.

The petitioner asserts that the Board erred in finding that the services of the president and secretary-treasurer were of the reasonable value of $1,200 and $600 per year respectively because there was no evidence to support such finding. The answer to this claim is that the Board made no such finding either expressly or impliedly. It found only that the Commissioner did not err in holding that the salaries paid in excess of these amounts were not ordinary expenses paid in carrying on petitioner's regular business. The allowances made by the Commissioner were not in issue in the absence of a cross-appeal, and they were neither considered nor passed upon by the Board.

█ The petitioner asked the Board to amend its findings and to grant a further hearing or a rehearing to afford it an opportunity to present further evidence upon the type and character of services rendered by its officers. The application was denied, and the petitioner complains. The motion does not set out the evidence by which it is proposed to establish that the services rendered were of a character or type different from that shown at the hearing. Such further evidence, whatever it may be, would be in conflict with the testimony in the record and with the verified statements in the petition filed on appeal to the Board. Under these circumstances, the Board should not be reversed for denying the requests. See Scott v. Commissioner, 8 Cir., 117 F.2d 36, 40.

█ The second element of the controversy is whether petitioner was in constructive receipt of rent from its tenant, the Sanatorium Company, for the year 1938 in the amount of $8,700. Petitioner carries its accounts on a cash basis and contends that it did not so receive such rentals.

The evidence tends to show that the agreed rental for the year 1938 was $18,000 subject to an increase in some amount on condition that the new buildings under construction at the beginning of the year should be completed and ready for occupancy before the end of the year. While the building program was under way the tenant had advanced to the petitioner on account sums totaling $10,500 and had paid on the 1938 rentals the sum of $9,300, leaving an unpaid balance, likewise carried on account, of $8,700. It was "the purpose", so petitioner's vice-president testified, "not to make an offsetting entry until it was determined whether the buildings would be ready." Sometime prior to the end of the year it was known that the buildings would not be ready for occupancy at any time during the year, and consequently that the rental would not be increased. The secretary-treasurer of the petitioner at the time of the hearing, who was also its attorney during the taxable period, testified: "I claim we could offset it, but we don't have to. * * * There was no reason why Acer could not credit $8,700 on the amount they owed Glenwood and there was no reason why they should."

Referring to the ruling of the Commissioner including the $8,700 in income, the taxpayer, in its petition on appeal to the Board, said: "There would be a tax saving to petitioner by virtue of this ruling and it is not seriously protested, although it is not conceded that the Commissioner had the legal right to enforce such a ruling."

The Board found that "the intention of the parties was that these mutual debts were to be treated as parts of one transaction. The offset of one debt against the other was intended and petitioner had an absolute right to make it during the tax year. Cf. Bailey v. Commissioner, 103 F.2d 448." We think that the requirements of constructive receipt are satisfied and the petitioner could not, by merely delaying the making of a book entry, postpone this rent receipt to a future period.

The evidence supports the Board's finding that the intention and purpose of the parties were to set off these mutual debts; to make an offsetting entry in their books when but not until it was determined whether the buildings would be ready for occupancy during the year 1938; that before the end of the year the fact that the buildings would not be ready was determinable; and that petitioner had the right to make the set-off entry within the taxable year. The consent of the tenant inhered in the agreement. The question for decision, therefore, is whether the petitioner for tax purposes had the right to delay the entry and postpone the "rent receipt to a future tax period."

It is true, as contended by the petitioner, that "Mutual debts do not per se extinguish each other." Bailey v. Commissioner of Internal Revenue, 5 Cir., 103 F.2d 448, 449. It is also the law that "Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him." Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 146, 85 L.Ed. 75, 131 A.L.R. 655. These rules are not inconsistent with the present decision. The principle here applicable is "that the power to dispose of income is the equivalent of ownership of it." Harrison v. Schaffner, 312 U.S. 579, 580, 61 S.Ct. 759, 760, 85 L.Ed. 1055. The revenue acts are "not so much concerned with the refinements of title as * * * with actual command over the property [which is] taxed—the actual benefit for which the tax is paid." Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916; Harrison v. Schaffner, supra, 312 U.S. at page 581, 61 S.Ct. 759, 85 L.Ed. 1055. The last act necessary to give petitioner command over the $8,700 of rentals for 1938 was not the book entry but the failure to complete the buildings for occupancy in that year. The right of command existed upon the occurrence of that event and any delay in making the proper book entry could not change it. Upon petitioner's theory, if the set-off entry should never be made the tax would never accrue. Riley Inv. Co. v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36. Negligent or willful delay in making a proper book entry cannot be used to defeat the taxing power. "* * * the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can [not] escape taxation because he has not himself received payment of it from his obligor." Helvering v. Horst, supra, 311 U.S. at page 116, 61 S.Ct. at page 147, 85 L.Ed. 75, 131 A.L.R. 655. The taxpayer in the instant case enjoyed the benefit of the economic gain when the right to receive credit for the rent accrued. The gain need not be collected by the taxpayer in order that it be taxable. Helvering v. Stuart, 63 S.Ct. 140, 87 L.Ed. —. Constructively received income is taxable when the amount is definitely liquidated and available to the taxpayer without restriction. Penn v. Robertson, 4 Cir., 115 F.2d 167, 175. The facts found by the Board meet these conditions.

The decision of the Board of Tax Appeals is affirmed.