**M. O. RIFE and Maidee W. Rife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

**No. 22015.**

United States Court of Appeals
Fifth Circuit.

Feb. 15, 1966.

Whitfield J. Collins, Robert A. Watson, Ft. Worth, Tex., for petitioners.

Frederick E. Youngman, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Melva M. Graney, Anthony Zell Roisman, Attys., Dept. of Justice, Sheldon S. Cohen, Chief Counsel, Hu S. Vandervort, Atty., I. R. S., Washington, D. C., for respondent.

Before RIVES, BROWN and MOORE,[*] Circuit Judges.

MOORE, Circuit Judge:

This is a petition to review a decision of the Tax Court, 41 T.C. 732 (1964), affirming the assessment of income tax deficiencies for the years 1954, 1955 and 1956 against petitioners M. O. Rife and Maidee W. Rife, husand and wife (hereinafter referred to collectively as petitioner), which resulted in large part from the disallowance of deductions claimed for drilling expenses in 1955, 1956 and 1957 and their deferral to succeeding calendar years.[1]

During the years involved, petitioner owned and operated Rife Production Company (hereinafter referred to as Production), a sole proprietorship, which was engaged in the exploration and development of oil and gas production. He was also a partner, owning a five-sixths interest, in the partnership known as Rife Drilling Company (hereinafter referred to as Drilling), which was engaged in the contract drilling of oil and gas wells. From 1954 through 1957, petitioner, in his individual capacity, doing business as Production, participated in oil well development activities jointly

---

[*] Of the Second Circuit, sitting by designation.

[1] The deficiencies were in the amounts of $9,050.61 for 1954; $70,522.83 for 1955; and $1,384.13 for 1956. The adjustments to petitioner's drilling expense deductions resulted in the disallowance of expenses in the amount of $168,234.43 for 1955, and an increase in his expense deductions for 1956 in the amount of $20,202 and for 1957 in the amount of $96,207.27.

with various co-owners. The wells were all drilled by Drilling and the drilling expenses were shared by petitioner and the co-owners according to their respective ownership interests.

All of the expenses incurred as a result of the drilling operations were paid currently by Drilling which, thereafter, billed the full amount of the expenses, plus its customary drilling profit, to Production and then charged the entire amount of such billings to petitioner's drawing account with the partnership. Production, in turn, billed each of the co-owners for his proportionate share of the drilling expenses. When Production received payment from the co-owners, petitioner transferred the amount received to Drilling, which then credited his drawing account for the amount it received. The amount remaining charged to petitioner's drawing account after the co-owners' payment was accounted for represented his individual share of the drilling expenses incurred.

Petitioner, individually and d/b/a Production, kept his books and records, and prepared his federal income tax returns, on the cash receipts and disbursements basis, using the calendar year as his accounting period. On the other hand, Drilling, the partnership, kept its books and records, and prepared its federal income tax returns on the accrual basis, using a fiscal year ending March 31. At the end of each partnership fiscal year, the balance in petitioner's drawing account was consolidated with his share of current partnership earnings and the resulting balance was closed out to his capital account on the partnership books. In computing his taxable income for the years 1955, 1956 and 1957, petitioner claimed a deduction for his share of the drilling expenses which were incurred,

paid by Drilling, and charged to his drawing account with the partnership during those years. The Commissioner, however, disallowed the portion of the deductions taken by petitioner in the calendar years 1955, 1956 and 1957 which was charged to his drawing account during the period of April 1st to December 31st and allowed such amounts as deductions in each succeeding year.[2] The disallowance was explained on the ground that, as petitioner was a cash basis taxpayer, he could deduct only expenses when paid and, according to the Commissioner, the drilling expenses were not paid by petitioner until his drawing account was actually closed out to his capital account on the partnership books. Since the partnership books were not closed until March 31st of each year, the Commissioner concluded that the expenses in question should be deemed paid only on March 31, 1956, 1957 and 1958.

Petitioner challenged the disallowance of the expense deductions in proceedings before the Tax Court instituted in 1960, on the ground that he paid the expenses at the time they were charged to his drawing account by Drilling and, thus, was entitled to deduct them in the calendar year during which his account was charged. The Tax Court upheld the Commissioner's determination that the expenses could be deducted only at the end of the partnership tax year. Its theory was that the charges to petitioner's drawing account constituted advances of his share of current partnership earnings which, according to Sections 706 and 731 of the Internal Revenue Code of 1954, as interpreted in Treasury Regulations Section 1.731–1(a) (1) (ii), cannot be accounted for by a partner until the last day of the partnership tax year, i. e., March 31st.

2. Petitioner contends in his brief that deductions for personal expenses, i. e., medical expenses, interest, taxes and charitable contributions, were paid through the partnership and charged to his drawing account in the same manner as the drilling expenses, and were allowed as deductions in the year of the charges by the Commissioner. However, there is nothing in the record to support this contention other than a remark by the accountant who filed petitioner's returns for the years at issue to the effect that petitioner paid many of his personal expenses through withdrawals from the partnership which were charged to his drawing account.

In a supplemental petition filed before the Tax Court in 1962, petitioner objected to the deficiencies assessed for the years 1954 and 1955 on the ground that they were made as a result of a second examination of his books of account for the years 1954 and 1955 conducted in violation of Section 7605(b) of the Internal Revenue Code of 1954, which provides that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." The facts with respect to this issue are undisputed. Petitioner's books and records for 1954 and 1955 were examined first in 1957, and deficiencies were proposed for each year (no adjustments were made with respect to the year of deductibility of the drilling expenses) which were paid promptly by petitioner. On April 17, 1957, petitioner filed an application for a tentative carryback adjustment with the District Director of Internal Revenue at Dallas, Texas, listing the loss year as 1956 and the prior taxable years affected as "1954–55". On July 12, 1957, petitioner received a "Notice of Allowance of Tentative Carryback Adjustment" which stated that "this allowance is a tentative adjustment pending an audit of the returns concerned." In December 1958, an IRS agent notified petitioner that he had been assigned to examine petitioner's books and records for the taxable years 1956 and 1957, and advised him that the examination of 1956 was in connection with the claimed net operating loss carryback. On July 3, 1959, upon completion of his examination, the agent sent a ten-day letter to petitioner in which he proposed adjustments for the taxable years 1956 and 1957, and as a result of the 1956 adjustments, one of which was an increase in his partnership income for 1956 of $68,-219.55, proposed an adjustment in the net operating loss carryback claimed for 1954.

Some time between December, 1958 and June, 1959, the agent conducted a re-examination of petitioner's books of account for 1954 and 1955, and it was stipulated that petitioner received no written notice of the re-examination other than the "Notice of Allowance of Tentative Carryback Adjustment" issued July 12, 1957.[3] At an informal conference held on July 30, 1959 (it was provided for in the ten-day letter dated July 1, 1959), the agent raised for the first time the issue of the taxable year in which petitioner's drilling expenses were allowable. It was not discussed at that time but, on September 9, 1959, a thirty-day letter was sent to petitioner proposing adjustments for the year 1955, including those relevant to the drilling expenses, which were based on information obtained as a result of the agent's re-examination of petitioner's books of account for 1955. Petitioner filed a formal protest to the thirty-day letter on October 8, 1959, in which he stated that the year 1955 had been reopened as to the item of drilling expenses by an agent "who conducted a second examination of taxpayer's records without complying with the required Internal Revenue procedures."

On the basis of the above facts, the Tax Court concluded that petitioner had actual notice of and consented to the second examination of his books of account for 1954 and 1955, and, therefore, was not entitled to any relief due to the failure of the Commissioner to comply with the requirements of Section 7605 (b), Internal Revenue Code of 1954. We agree and find that the record amply supports the Tax Court's findings of notice and consent.

---

3. It should be noted that on February 16, 1959 and March 21, 1960, petitioner executed a Form 872 for the taxable year 1955 which is a regular consent form used by the Commissioner to obtain consent to the extension of the statute of limitations for the assessment and collection of deficiencies. The limitation period was extended until December 31, 1960.

Petitioner was notified in 1957 that his tax returns for 1954 and 1955 would be audited to ascertain the validity of the claimed operating loss carryback,[3a] and in 1958 that his books of account relevant to a determination of his 1956 income would be examined. Moreover, in the ten-day letter dated July 1, 1959, he was told that he had understated his partnership income for 1956 by a substantial amount. Since the partnership kept its books on an accrual basis and for a fiscal year ending March 31st, it must have been apparent to petitioner that the agent's re-determination of his partnership income for 1956 involved an inspection of petitioner's and Drilling's books of account for the period April 1st to December 31, 1955, which of course showed the charges to petitioner's drawing account for the drilling expenses incurred and paid by Drilling during that period. Petitioner admitted before the Tax Court that he did not object to the re-examination of his 1954 and 1955 books of account necessitated by his application for a carryback adjustment. His only objection to the re-examination was made in October, 1959, after he discovered that certain information obtained as a result of it formed the basis for adjustments concerning his drilling expense deductions. Thus, it is clear that the essence of petitioner's objection to the re-examination was not that it had been conducted without his knowledge but, rather, that information obtained therefrom was used for a purpose that he did not anticipate. Such an objection, however, is not valid, for once a taxable year is reopened for one purpose without objection, it is validly reopened for all purposes. See Phillip Flynn, 40 T.C. 770, 774 (1962). In other words, petitioner waived his rights under Section 7605(b) of the Internal Revenue Code of 1954 since the second examination of his books of account for 1954 and 1955 was conducted with his knowledge and he failed to object to it promptly. See, e. g., United States v. O'Connor, 237 F.2d 466, 476 (2d Cir. 1956); United States v. Young, 215 F.Supp. 202, 204–205 (E.D.Mich.1963); 8A Mertens, supra, § 47.48, at 140–41 (1964 rev.).[3b]

The principal substantive dispute between the parties to this appeal concerns the year in which petitioner, a cash basis taxpayer, can claim a deduction for drilling expenses. Petitioner contends that he is entitled to deduct the expenses in the calendar years 1955, 1956 and 1957 when they were incurred, paid by Drilling, and charged to his drawing account with Drilling on the ground that charging his account constituted payment of the expenses for tax purposes; or, in the alternative, that irrespective of entries on the partnership's books, Drilling's payment of the expenses constituted payment by petitioner with borrowed funds, i. e., by way of an advance or loan from Drilling, which entitled petitioner to deduct the expenses when they were actually paid by Drilling on his behalf, not in succeeding years when the loans were repaid.

**3a.** As the Tax Court pointed out, "The statutory scheme contemplates an examination of a taxpayer's books and records subsequent to such allowance to determine whether the tentative adjustment will stand as the final adjustment." 41 T.C. 732, 749 (1964), see Int.Rev.Code of 1954, § 6411(b).

**3b.** Petitioner's contention that Reineman v. United States, 301 F.2d 267 (7th Cir. 1962) requires a different result is without merit. In *Reineman* a deficiency assessment was set aside on the ground that it was based on a second examination of the taxpayer's books conducted without giving him prior written notice as provided for in Int.Rev.Code of 1954, Section 7605(b). Cf. *Application of Leonardo*, 208 F.Supp. 124 (N.D.Cal. 1962). However, it was conceded that the first time that the taxpayer became aware of the second examination of his books was when he received a ten-day letter concerning the deficiency, and the court found that "[t]axpayer was totally unaware of any re-examination, while it was in progress." Id. 301 F.2d at 271. This finding is directly contrary to the finding of the Tax Court here, which is supported by the record, that the second examination of petitioner's books of account was conducted with his knowledge and consent.

■■ At the outset, we agree with the Tax Court that there is no factual support for the contention that the charges to petitioner's drawing account should be treated as, or were intended to be, a loan by Drilling to petitioner. None of the ordinary indicia of a loan, such as a note evidencing the indebtedness or an agreement providing for interest or a due date for payment of the principal, were present in the transaction. Moreover, while petitioner contends that McAdams v. Commissioner, 15 T.C. 231, aff'd, 198 F.2d 54 (5th Cir. 1952) and Island Gas, Inc., 30 T.C. 787 (1958) are controlling here, we disagree. In *McAdams* the taxpayer and his brother-in-law were co-owners of a lease and incurred drilling expenses in developing it. The brother-in-law paid both his and the taxpayer's share of the drilling expenses in 1940 and 1941, and the taxpayer repaid him in 1945. The Tax Court found that, despite the absence of a formal loan agreement between the parties, payment by the brother-in-law on behalf of the taxpayer in effect constituted a loan to the taxpayer and, thus, that the taxpayer could deduct only his share of the drilling expenses during the year they were actually paid on his behalf, not in the year he repaid the borrowed funds. Cf. Irving Segall, 30 T.C. 734 (1958) [where corporation paid personal expenses (legal fees) of taxpayer-stockholder, no deduction in year of repayment]; accord, Patrick v. United States, 186 F.Supp. 48 (D. S.C.1960), aff'd, 288 F.2d 292 (4th Cir. 1961), rev'd on other grounds, 372 U.S. 53, 83 S.Ct. 618, 9 L.Ed.2d 580 (1963); E. Gordon Perry, 28 B.T.A. 497 (1933) (where corporation paid interest on personal indebtedness of taxpayer-stockholder, no deduction in year of repayment). The meager support in the record for the finding in *McAdams* that payment of the taxpayer's share of the drilling expenses was intended as a loan, see 198 F. 2d 54, 56 (5th Cir. 1952) (Rives, C. J., dissenting), warrants restricting that aspect of the decision to the particular factual pattern involved there. While it might be reasonable to presume, in the absence of contrary evidence, that payment by one co-owner of another's share of an outstanding debt of their joint venture was intended as a loan by the payor, no such presumption can be indulged here where the payment alleged to be a loan was the payment by a partnership of its own liabilities, which were later charged to a partner's drawing account with the partnership pursuant to a prior contract between the parties. Here, Drilling, under contract to petitioner and his business associates, performed the drilling operations and incurred the expenses in the first instance and, when it paid the expenses, it was paying its own liabilities. Payment of the expenses, in conjunction with charging them to petitioner's drawing account, without more, cannot support an inference that Drilling's payment was intended as a loan to petitioner.

Island Gas Inc., supra, is also inapposite. There, Kuhn, an oil well drilling contractor, entered into a drilling contract with the taxpayer-corporation of which he was a 95 per cent owner. Subsequently, he borrowed $175,000 from a bank which he advanced to the taxpayer which then used the borrowed funds to pay Kuhn for its share of the drilling expenses incurred under the contract. On that record, the court concluded that the $175,000 was a loan to the taxpayer and could not be deducted when repaid to Kuhn. The fact that the loan in *Island Gas* was evidenced by a clearly identifiable transfer of the borrowed funds from Kuhn to the taxpayer and the fact that the loan transaction was entirely separate from the payment of the expenses by the taxpayer clearly distinguish that case from the case at bar.

■ Since it is clear that a cash basis taxpayer cannot deduct expenses incurred unless they have been paid during the taxable year, 4 Mertens, Federal Income Taxation § 25.10 at 37 (1960 rev.); Treas.Reg. § 1.461–1(a) (1), the crucial issue raised here is whether the charges to petitioner's drawing account with Drilling constituted payment of the drilling expenses by petitioner so as to create

a deductible expense during the year in which the charges were made. See Surrey & Warren, Federal Income Taxation (cases and materials) 453 (1960 ed.). Both parties to the appeal agree that until a cash basis taxpayer suffers an economic detriment, i. e., an actual depletion of his property, he has not made a payment which will give rise to an expense deduction. E. g., Andrew Jergens, 17 T.C. 806, 809 (1951); cf. Page v. Rhode Island Hospital Trust Co., 88 F.2d 192, 193, 121 A.L.R. 693 (1st Cir. 1937). Moreover, it is agreed that a charge against petitioner's capital account or interest in Drilling should constitute payment for tax purposes when it is effected. It is the Government's position, however, that petitioner's capital account or interest remained unaffected until his drawing account, containing the charges for drilling expenses, was closed out to his capital account concurrently with his share of current partnership earnings at the close of the partnership's fiscal year. It was not until the occurrence of that bookkeeping entry, argues the Government, that the expenses in question were "actually taken out of his share of partnership capital" or partnership income, and an accounting was effected which resulted in shifting the payment of the expenses from the partnership to petitioner.

■ We conclude, however, that the Government's position is untenable. First, it is contrary to generally accepted principles of partnership accounting. A partner's drawing or personal account with a partnership is in all significant respects a part of his capital account, so that a charge against such an account is tantamount to a charge against his capital account, e. g., it reflects a decrease in the partner's financial interest in the partnership. See Karrenbrock & Simon, Advanced Accounting, 11, 2d ed. (1955). In other words, charges to a partner's drawing account record changes in his share of the net worth or capital of the partnership and, therefore, have the same effect as a *direct charge* against his capital account, to wit, a reduction in his

net interest in the partnership by the amount of the charge. See Finney & Miller, Principles of Accounting, 108 (4th ed. 1952). Moreover, the economic significance of debits and credits to a partner's drawing account is in no way affected by the mere fact that "at the end of each accounting year, the balances of partners' drawing accounts are commonly transferred to their related capital accounts." Johnson, Elementary Accounting, 356 (4th ed. 1962). Thus, the charges to petitioner's drawing account in effect constituted a charge to his capital account in the amount of his share of the drilling expenses and reduced his interest in the partnership by that amount when the charges were recorded. The above-mentioned accounting principles lead to the conclusion that the economic detriment suffered by petitioner at the time his drawing account was charged with the drilling expenses was sufficient to give rise to a deductible expense during the calendar year in which the charges were made. The closing of the partnership books at the end of its accounting year merely effected a consolidation of the vital economic events, i. e., periodic alterations in petitioner's interest in the firm, which occurred during that period.

■ Secondly, the Government's position fails to recognize that "a payment by a third party will be considered payment by the taxpayer when a debit is made to the taxpayer's account with the third party and the charges to the account do not exceed the credits included in income." 2 Mertens, supra § 12.54 at 148–149 (1961 rev.); Andrew Jergens, supra. For example, in Andrew Jergens, the taxpayer was president of a corporation which paid certain personal expenses for him and charged the appropriate amounts to his personal account (the account was also credited with salary and dividend payments to the taxpayer). The court concluded that the debits to the taxpayer's personal account met the requisites for cash basis payments, finding that "in each of the taxable years [his] * * * personal account attained

a credit balance after the debits were made and he suffered a * * * detriment to the extent of the charges made to his account." Id. 17 T.C. at 809. See Gertrude Rosenblatt, 16 T.C. 100 (1951). Moreover, in Rollin C. Reynolds, 44 B.T.A. 342 (1941), where the system of charging a taxpayer's personal account with a corporation for expenses paid on his behalf was described as a method of payment "entirely consistent with the cash system of accounting * * * " id. at 356, it was determined that any excess of expenses charged over credits to the account during the appropriate tax year should be disallowed as a deduction, for there could be "no showing that payment of [the] * * * excess was made during the taxable year." Ibid.

Since the function of a partner's drawing account with a partnership is virtually identical with the personal account of the owner of a business, so that charges to such accounts result in similar economic detriments to the respective partner or owner, the above-quoted proposition and the cases from which it is derived can properly be applied to the case at bar. Accordingly, the relevant inquiry is whether at the close of each calendar year in which petitioner claimed a deduction for drilling expenses charged to his drawing account, his equity in the partnership was sufficient to cover the charges (without taking into consideration his share of current partnership earnings). It appears from a schedule, provided by petitioner in his reply brief, setting forth a running account of the credits and debits affecting petitioner's capital interest in the partnership that, as of December 31, 1955, there was a negative balance in his partnership interest of $43,386.16 but as of December 31, 1956 and 1957 there was a credit balance so that the charges entered during those years were adequately covered. Since it is our conclusion that the decrease in petitioner's equity in the partnership effected by the charges to his drawing account in the amount of the drilling expenses in question constituted payment for tax purposes to the extent that sufficient funds (without allowing for his share of current partnership earnings) were available to absorb the charges, the only portion of the drilling expenses subject to disallowance during the years at issue is the amount, if any, of drilling expenses charged to petitioner's account during 1955 at a time when no funds were available to cover them and as to which no funds were available at any time during that calendar year. See Rollin C. Reynolds, supra, ($110.09 disallowed as deduction since it constituted the excess of interest expenses charged to taxpayer's account, $10,110.09, over the amount credited to that account, $10,000.00, in the taxable year).

The Government argues, however, that, assuming the proper test for determining whether payment was made was to ascertain the net interest of petitioner in Drilling at the close of each taxable year, under Bailey v. Commissioner, 103 F.2d 448 (5th Cir. 1939), that test cannot be relied on in the absence of a showing that the parties intended the charges to be offset against amounts then owing to the petitioner. It is contended that the fact that the charges to petitioner's drawing account were offset only against his capital account on the partnership books at the close of its fiscal year conclusively demonstrates that they were never intended to constitute payment of the drilling expenses. The Government's reliance on Bailey v. Commissioner, supra, is misplaced, for the actions and purposes of the parties there were entirely different from those which concern us.[4] Compare Adams Bros. Co. v. Commissioner, 222 F.2d 501, 508 (8th

4. In *Bailey* the taxpayer sold a parcel of land to a corporation which he controlled, receiving in return four notes due in varying periods of time from the date of purchase, and the corporation charged the amount of the notes to a bills payable account. It also carried on its books a loan account to the taxpayer which was credited with monies he received from the corporation. In 1933, when the taxpayer reported income based on the payment of three of the notes, the Commissioner

Cir. 1955). Moreover, it is perfectly clear under principles of partnership accounting that charges to a partner's drawing account are directly related to his equity in the firm and must be offset against his capital interest in the firm to accurately ascertain his net investment. It would be entirely inconsistent with these principles to find, in the absence of contrary evidence, that petitioner's equity in Drilling was not accurately reflected during his taxable year by the net balance in his capital account, ascertained by off-setting all debits and credits affecting his capital interest in the partnership at the close of each calender year.

Finally, we reject as without support in the record the Tax Court's characterization of the charges to petitioner's drawing account as advance distributions of his share of current partnership earnings. Debits to a partner's drawing account reflect a decrease in his then existing interest in the partnership and no evidence has been produced to demonstrate that the charges here were not intended to achieve the same result. Moreover, it does not necessarily follow, as the Tax Court proclaimed, that to consider the charges as payment of the drilling expenses in question requires treating them as "income" to petitioner. To the extent that income from other sources (the record shows that credits to petitioner's drawing account were made from time to time from sources outside the partnership, including bank loans) or partnership income received during the taxable year (petitioner's account was credited with his share of partnership earnings at the end of each partnership fiscal year) provided a fund against which the charges to his drawing account could be offset at the end of each calendar year, there was no need to antici-

pate future income from the partnership and no such intention can be imputed to Drilling or petitioner on the basis of the record here. The fact that the credits to petitioner's account during the taxable year were not earmarked for payment of the drilling expenses debited to his account does not preclude petitioner from offsetting them against those debits to ascertain the extent to which payment had been made during his taxable year.

In sum, we hold that petitioner was entitled to deduct drilling and development expenses incurred and charged to his drawing account with the partnership, Drilling, during the calendar years 1955, 1956 and 1957, to the extent that his equity in the partnership was sufficient to cover the charges. Accordingly, we reverse that portion of the Tax Court decision holding that the Commissioner properly determined the year of deductibility of petitioner's drilling expenses and remand for a recalculation for the year 1955 in accordance with this opinion.

determined that the entire amount should be included as income in that year. The taxpayer argued, however, that the income was actually realized in installments since on the maturity date of each of the three notes, the balance in his loan account with the corporation exceeded the

amount due on the notes. The court rejected the argument, finding that "the purpose was to keep the notes unpaid, and to carry the cash advances as a loan," id. 103 F.2d at 449, and, thus, the money advanced to the taxpayer was not intended as payment of the notes.