CHARLES D. PATTERSON AND DIXIE M. PATTERSON, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Patterson v. Commissioner
Docket No. 5511-78
United States Tax Court
T.C. Memo 1984-58; 1984 Tax Ct. Memo LEXIS 612; 47 T.C.M. (CCH) 1029; T.C.M. (RIA) 84058; February 6, 1984. Dougal C. Pope, for the petitioners. David W. Johnson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $9,518.85 in the 1974 Federal income tax of petitioners Charles and Dixie Patterson. After concessions the issues for our decision are (1) whether respondent conducted a second inspection of petitioners' 1974 return without giving the notice required by section 7605(b); [1] and (2) whether petitionersmay claim a deduction for a loss allegedly sustained by the partnership Raintree Lakes, Ltd. in 1974. FINDINGS OF FACT Some of the facts have been stipulated and those facts are so found. The stipulations and the exhibits attached thereto are incorporated by this reference. Charles D. and Dixie M. Patterson are husband and wife who resided in Texas when the return and the petition in this case were filed. Dixie Patterson is a party to this proceeding solely because she filed a joint *614 return with her husband. All references to petitioner therefore concern only Charles D. Patterson. Charles D. Patterson was the sole owner of a subchapter S corporation called Charles Patterson & Associates, Inc.The corporation used a fiscal year ending March 31; it timely filed its returns, Forms 1120S, for the years ended March 31, 1973, and 1974. In April 1973, petitioner, acting on behalf of that corporation, formed a limited partnership along with four other individuals. The partnership, Raintree Lakes, Ltd., was formed under the laws of the state of Texas, Article 6132(a), Tex. Stat. Ann. (Vernon 1970); its purpose was to "develop, manage, operate, and to sell" real property located in Upshur County, Texas. The limited partners contributed $4,750 for each one percent of ownership.Their shares were as follows: SCHEDULE OF LIMITED PARTNERS Percentage of
Capital
Names
Ownership
Contributions
Carey McAdams
5.26%
$25,000
William Lacy &
Diana L. Plueckhahn, Jtly.
5.26%
25,000
Pete W. Rippey
2.1%
9,600
Immie Priddy
3%
14,250
Total
$73,850
Charles D. Patterson & Associates, Inc., the general partner, contributed no cash at formation. *615 Profits and losses were to be divided among the limited partners in proportion to their percentage interests; the remainder was allocated to the general partner. A partnership balance sheet dated July 2, 1973 shows assets totalling $659,250. This included real property worth $444,500 and other fixed assets--primarily recreational facilities-worth $185,500. The major liability was a mortgage of $540,000. The partners' capital account was $79,250. [2]
On June 29, 1973 the partnership purchased 951.8 acres of land in Upshur County, Texas from Raintree Lakes, Inc., a Texas corporation. The purchase price was $600,000. On that same day the partnership executed a real estate lien note to Raintree Lakes, Inc., for $540,000 and a deed of trust securing payment for the note. [3] These documents were signed by petitioner as president of Charles D. Patterson & Associates, Inc., the general partner of Raintree Lakes, Ltd. In 1974 the partnership defaulted on its payments to the seller; on December 4, 1974 the property was sold by *616 the trustee for $440,446 to Rainbow Development, Inc. The partnership filed returns, Forms 1065, for fiscal years ended December 31, 1973 and 1974. A net loss of $150,050 was claimed in 1973; the 1974 loss was reported as $569,859. The losses for those years were allocated as follows: % of Interest
1973
1974
Charles Patterson &
Associates, Inc.
1%
$1,500
$5,698
Charles D. Patterson
83.38% *
125,112
475,148
Wm. Lacy & D. Plueckhahn
5.26%
7,892
29,974
P. W. Rippey
2.1%
3,151
11,967
C. McAdams
5.26%
7,892
29,974
I. Priddy
3%
4,501
17,095
Petitioner claimed the 1973 loss of $125,112 allocated to him by the partnership on his individual return for that year; his overall loss in 1973 was $75,084. In May 1974 petitioner filed amended returns for tax years 1970, 1971, and 1972 *617 on which he claimed a net operating loss carryback from 1973. Petitioner's 1974 return shows a loss of $332,780 from Raintree Lakes, Ltd., and a net loss from "Partnerships, Estates or Trusts, Small Business Corporations" of $320,861. [4] A schedule attached to the 1974 partnership return indicates that petitioner calculated his basis in the partnership at $332,780. [5]
In 1975 Mr. Squires of the Internal Revenue Service audited petitioner's 1973 return. Petitioner's C.P.A., Ed Ploznick, was at petitioner's home during the approximately 4-hour audit conducted by respondent's agent. All of petitioner's books and records, including his 1974 individual return *618 and the 1974 partnership return were stored at his home. The agent asked some questions about events reported on the 1974 return. In 1976, after petitioner had moved to Indianapolis, Indiana, he received notice that respondent planned to audit his 1975 return. The letter requested that he bring his 1974 return to the appointment. Petitioner's 1975 return included a loss carry-forward from 1974, this loss was discussed at the meeting. In the course of the hour-long meeting the agent also looked over both the individual return and the partnership return for 1974. Respondent's work papers bore the notation "74 return exam'd." In December 1976 petitioner received notice that no change would be required in his 1975 tax. Shortly thereafter petitioner moved back to Texas. In November 1977 and again in January 1978 he received requests for an extension of time to examine his 1974 return. Petitioner did not execute the extension. Respondent issued a statutory notice of deficiency on March 3, 1978, disallowing petitioner's partnership loss on the ground that a deductible loss and not been established. OPINION Petitioner Charles D. Patterson owns a subchapter S corporation *619 which is the general partner in Raintree Lakes, Ltd., a Texas limited partnership. In 1974 the partnership defaulted on various loans, and most of its assets were sold by the trustee. The partnership allegedly sustained a loss of over $500,000 in 1974; petitioner claimed a portion of that loss on his individual return. In 1976 petitioner's 1973 return was audited by respondent. His 1974 books and records were present during the audit, and the agent asked a few questions about transactions that took place in 1974. In 1977 petitioner's 1975 return was examined. The agent looked at the 1974 returns at that time, and inquired about the 1974 loss that petitioner carried forward to 1975. As a preliminary matter we must address petitioner's contention, first raised on brief, that the respondent acted arbitrarily in issuing a deficiency notice "because the Respondent was notified in writing by the Petitioner that the Petitioners' 1974 records had been previously audited and the loss which appeared on that return had been approved by Internal Revenue." The position is meritless.Petitioner's letter to the respondent states that "I have been audited for the taxable years 1970, 1971, *620 1972, 1973, and 1975;" petitioner thus realized in 1978 that the 1974 return had not been audited. There is simply no ground for contending that respondent's issuance of a statutory notice was anything out of the ordinary. Next, we must decide whether respondent inspected petitioner's 1974 books and records without complying with section 7605(b), and, if so, what effect this has on the deficiency determination. Section 7605 (b) provides that "only one inspection of a taxpayer's books of account shall be made for each taxable year" unless the Secretary notifies the taxpayer in writing that an additional inspection will be necessary. [6] The provision was enacted as part of the Revenue Act of 1921, 42 Stat. 310 to prevent taxpayers from being annoyed by overzealous revenue agents. United States v. Powell, 379 U.S. 48 (1964). *621 In the instant case we do not believe that there was any violation of section 7605(b). First, the statute refers explicitly to "books of account," not simply to a return. Thus "a review of the Form 1040, and accompanying schedules, does not constitute an inspection of a taxpayer's 'books of account.'" Benjamin v. Commissioner,66 T.C. 1084, 1097 (1976), affd. on another issue 592 F.2d 1259 (5th Cir. 1979); Pleasanton Gravel Co. v. Commissioner,64 T.C. 510, 527-528 (1975), affd. per curiam 578 F.2d 827 (9th Cir. 1978), cert. denied 439 U.S. 1071 (1979); Geurkink v. United States,354 F.2d 629 (7th Cir. 1965). When respondent's agent looked at petitioner's 1974 return during the audit of the 1975 return, there was no inspection within the meaning of section 7605(b). Second, numerous cases have held that if the second inspection is made with the taxpayer's knowledge and without any objection, the notice requirement is waived. Rife v. Commissioner,41 T.C. 732, 746 (1964), affd. on this issue and revd. on another issue 356 F.2d 883, 886-887 (5th Cir. 1966); United States v. Baker,451 F.2d 352 (6th Cir. 1971). *622 Petitioner did not object to respondent's request that he bring his 1974 return to the meeting; thus even if this were to constitute an inspection, petitioner has waived any objection he might have had under section 7605(b). Our conclusion that there was never a second inspection of petitioner's books makes discussion of the effect of a violation on the statutory notice unnecessary. Finally, we must decide whether petitioner is entitled to a deduction in 1974 for a loss allegedly incurred by the limited partnership Raintree Lakes, Ltd. Petitioner bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Petitioner relies on the partnership returns for taxable year 1974 as evidence that a loss was sustained. Respondent contends that a loss has not been established. We agree with respondent. Petitioner has offered almost no evidence whatsoever to substantiate the loss claimed on the partnership return. All we know is that the partnership defaulted on its obligation to L. A. Henderson, and that assets securing that debt were sold by the trustee. We do not know the partnership's basis in the *623 assets, whether there were other assets, whether there was income that year to offset the loss, etc. Petitioner has simply not offered enough facts to convince us that a deductible loss was incurred. We note additionally that petitioner has offered no evidence of his basis in the partnership. According to the limited partnership agreement, the general partner is Charles D. Patterson & Associates, Inc., not the petitioner individually; the only "evidence" showing that petitioner had an interest in the partnership are the returns. Although that corporation is wholly-owned by Mr. Patterson, he is not free to disregard its existence in determining his income tax liability. [7]Moline Properties v. Commissioner,319 U.S. 436 (1943); cf. section 1.1372-1, Income Tax Regs.
*624 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954. as amended and in effect during the year at issue.↩
2. The discrepancy between the figure shown on the balance sheet and the capital contributions shown in the partnership agreement was not explained.↩
3. The partnership balance sheet shows the debt to L. A. Henderson rather than to Raintree Lakes, Inc., the party listed on the documents. L. A. Henderson was the president of Raintree Lakes, Inc., a corporation later known as Rainbow Development, Inc.↩
*. Petitioner did not explain the basis for ownership percentages shown on the return.↩
4. The loss from Raintree Lakes, Ltd. was offset by $11,918 of income from the subchapter S corporation Charles D. Patterson & Associates, Inc. ↩
5. Schedule L of the 1973 partnership return reports $531,742 as capital contributed during the year; the schedule K-1 for petitioner shows his contribution as $457,892. There is virtually no documentation for these figures in the record. Petitioner's 1973 loss of $125,112 was deducted from his original basis ($457,892) to arrive at the figure used in 1974 ($332,780).↩
6. The full text of sec. 7605(b) is as follows: (b) RESTRICTIONS ON EXAMINATION OF TAXPAYER.--No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.↩
7. Assuming that the general partner is the corporation, any losses sustained by the partnership in its fiscal year ended December 31, 1974 allocable to the corporation should be deducted on its return for the fiscal year ended March 31, 1975. Sec. 706(a). If the subchapter S corporation showed a net loss for that year, the loss would be deductible by the shareholder, petitioner Patterson, in his taxable year ended December 31, 1975. Sec. 1374(b) (now sec. 1366(a)).↩