Ronald R. LEVY and Esther Levy,
Petitioners-Appellants/Cross-Appellees,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee/Cross-Ap-
pellant.

Nos. 83–7217, 83–7327.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1984.

Decided May 8, 1984.

Bruce I. Hochman, Barry L. Guterman, Hochman, Salkin & DeRoy, Beverly Hills, Cal., for petitioners-appellants/cross-appellees.

George Hastings, Michael Paup, Dept. of Justice, Washington, D.C., for respondent-appellee/cross-appellant.

Before CHOY, NELSON, and CANBY, Circuit Judges.

**1436**

CHOY, Circuit Judge:

Ronald R. Levy and his wife Esther are two Beverly Hills residents who invested in an oil drilling venture involving Moray Oil Company, Inc. (Moray) and its wholly owned subsidiary Dubros, Inc. (Dubros), two Kansas corporations. Levy entered into three limited partnership agreements [1] with Moray, covering two leases, known as the Baker and Croxton leases, in Linn County, Kansas. The partnership agreements provided that Moray would be the general and Levy the limited partner in each partnership. Levy would make a capital contribution consisting of a cash payment and a negotiable note secured by an interest in production proceeds. Dubros was to drill the oil wells under a turnkey contract with Moray. All income and expenses were allocated under the agreement to Levy, with Moray retaining overall management and control, a 25% working interest in the Baker lease, and a royalty interest (convertible to a 50% working interest) in the Croxton lease.

Levy, a cash basis taxpayer, filed a timely election to expense rather than capitalize intangible drilling and development costs (IDCs) under I.R.C. § 263(c) and Treas. Reg. § 1.612–4(a). He claimed partnership loss deductions for IDCs incurred in 1969 and 1970, largely for amounts Moray prepaid on the Dubros drilling contracts. Although the Tax Court found a legitimate business reason for the prepayments, it held that Levy could take loss deductions only to the extent of his cash contribution to the partnership. *Levy v. Commissioner*, Tax Ct.Mem.Dec. (P–H) ¶ 82,419 (July 26, 1982). Both Levy and the Commissioner appealed. At issue is the amount of IDCs that lawfully can be deducted by Levy, as well as the timing of any deductions to which Levy may be entitled. We affirm the judgment of the Tax Court.

## I. *Distortion of Income Authorized by I.R.C. § 263(c)*

Levy argues that I.R.C. § 263(c) and Treas.Reg. § 1.612–4(a), by creating an op-

tion to expense costs that otherwise would have to be capitalized and recovered through depletion or depreciation, create a "special method of accounting" within the meaning of Treas.Reg. § 1.446–1(c)(1)(iii). The latter regulation generally authorizes taxpayers to keep their books in accordance with special methods of accounting authorized by the Code. As such, Levy argues that he has a license to expense IDCs when "incurred" regardless of his method of accounting. The Code and the Regulations require, however, that any taxpayer's accounting method clearly reflect income. I.R.C. § 446(b); Treas.Reg. § 1.446–1(a)(2); *see id.* § 1.446–1(b)(1), –1(c)(1)(iv)(a).

■ Although I.R.C. § 263(c) expressly authorizes some distortion of income, it should not be read more broadly than written. Exemptions from taxation are matters of legislative grace and will be construed narrowly in light of the policy to tax income comprehensively. *Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949); *Holt v. Commissioner*, 364 F.2d 38, 40 (8th Cir.1966), *cert. denied*, 386 U.S. 931, 87 S.Ct. 952, 17 L.Ed.2d 805 (1967). Because of this policy, any Code provision authorizing distortion of income reporting also should be narrowly construed, for such a provision is likewise a matter of legislative grace. Section 263(c) permits a taxpayer to expense costs that normally would be capitalized. If the taxpayer's accounting method would not recognize the costs at all, then, they may not be capitalized and thus may not be expensed under section 263(c).

■ Generally, a taxpayer using the cash method to account for income must account for expenses the same way, Treas. Reg. § 1.446–1(c)(1)(iv)(a), and Levy has offered no other justification for his proposed accounting method. Levy therefore must take his IDC deductions only as permitted by cash method accounting principles. *See Keller v. Commissioner*, 79 T.C. 7, 39

---

**1.** The Tax Court found it unnecessary to decide whether the agreements created true partner- ships. For the reasons stated in its opinion, we likewise need not reach this issue.

(1982), aff'd, 725 F.2d 1173 (8th Cir.1984); *Stradlings Building Materials, Inc. v. Commissioner,* 76 T.C. 84, 89 (1981); Rev. Rul. 80–71, 1980–1 C.B. 106.

## II. *Extent of Deduction Permitted Under the Cash Method*

Analyzing Levy's case under the cash method of accounting, we find the case of *Rife v. Commissioner,* 356 F.2d 883 (5th Cir.1966), to be instructive. Rife participated in several oil drilling joint ventures which entered into contracts for the drilling work with a partnership in which Rife owned a five-sixths interest. Drilling expenses were paid by the partnership and charged to Rife's drawing account with the partnership. The court held that, in the absence of a showing that Rife obtained a loan from any of his co-partners to pay the expenses, Rife could only deduct drilling costs charged to his drawing account to the extent of his equity in the partnership. The court reasoned that Rife, a cash basis taxpayer, could not take a deduction unless he had suffered an economic detriment. Since the upper bound on Rife's possible economic detriment from the partnership was his equity, that amount should also be the upper bound on the amount he could deduct. *See id.* at 888–91.

■ We find *Rife* persuasive. Levy, therefore, may not deduct expenses allocated to him in excess of his cash contribution. The unpaid notes that he signed did not increase his capital investment in the partnership, and the Tax Court's finding that Moray did not intend to loan Levy money for expenses is not clearly erroneous.

The negotiable but unpaid notes that Levy executed and delivered to Moray do not give rise to equity in the partnership. Such notes represent only a promise to pay and not the paying out or reduction of assets. *Don E. Williams Co. v. Commissioner,* 429 U.S. 569, 582–83, 97 S.Ct. 850, 858–59, 51 L.Ed.2d 48 (1977).

Levy argues, however, that he should be allowed a deduction for his distributive share of all amounts Moray paid to Dubros. He relies on *McAdams v. Commissioner,* 15 T.C. 231 (1950), aff'd, 198 F.2d 54 (5th Cir.1952), which required a taxpayer to take an expense deduction in the year that his partner paid an outstanding partnership debt. The court reasoned that the taxpayer's partner presumptively paid the debt on behalf of both partners and lent the taxpayer his share of the debt. 15 T.C. at 235. In this case, however, the Tax Court found that Moray had no intent to lend Levy funds. That finding is one of fact and may not be disturbed on appeal unless clearly erroneous. *Thompson v. Commissioner,* 631 F.2d 642, 646 (9th Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

■ Levy asserts that the Tax Court erred because the notes demonstrate that Moray paid Dubros on his behalf. He writes:

Isn't the more logical answer that the notes executed in favor of Moray evidence the loan made by Moray to Appellants, which loan was used by Appellants to satisfy the obligation to Dubros under the drilling agreements?

Appellant's Opening Brief at 19. The Tax Court emphasized that neither Levy nor Moray had a contractual obligation to pay Dubros anything other than production proceeds for ten years. The court reasoned that Moray made a prepayment on the contract primarily to help its subsidiary corporation, which had a "pressing need for current funds." Tax Ct.Mem.Dec. (P–H) at 82–1855. Although it might be reasonable to presume that payment by one co-owner of an outstanding partnership debt above his own share of that debt constitutes a loan to the other co-owners, *Rife v. Commissioner,* 356 F.2d 883, 888 (5th Cir.1966), it is reasonable to conclude otherwise when that co-owner is prepaying the debt. The Tax Court concluded that Moray was not motivated by a desire to lend the partnership money when the partnership did not need money. No partnership debt was outstanding and no partnership liability, contractual or otherwise, had yet arisen. The Tax Court was not clearly erroneous.

We therefore agree with the Tax Court that Levy may recognize under the cash method of accounting no more costs than the extent of his cash contribution.

### III. *Allocation Between Tangible and Intangible Costs*

 The Commissioner and Levy agree that costs Levy expended on the oil drilling venture included both tangible and intangible costs. Intangible costs may be expensed under Treas.Reg. § 1.612–4(a), while the tangible costs must be capitalized under *id.* § 1.612–4(c)(1). The parties, moreover, have stipulated to the amount of tangible costs Levy incurred. Levy concedes, as he must, that his costs must be allocated between tangible and intangible costs in order to determine what may be expensed. On cross-appeal, however, the Commissioner argues that the amount of Levy's *cash contribution* must also be allocated between tangible and intangible costs.

We disagree. The Tax Court held that the sum of IDCs expended exceeded Levy's cash investment. Levy is therefore entitled to recognize IDCs to the extent of his cash investment, and may expense those costs. This is apparently what the Tax Court meant when it stated:

> Due to our holding, we need not decide whether expenses incurred in installing pipelines ... [are IDCs]. Notwithstanding those costs, sufficient IDCs have been incurred to entitle petitioner a deduction to the extent of his cash investment. For the same reason, we need not reconstruct actual drilling costs.

Tax Ct.Mem.Dec. (P–H) at 82–1855 n. 14. We need not decide whether Levy's use of the cash receipts and disbursements method did not clearly reflect income, because the Commissioner abandoned that argument below. *Id.* at 82–1856 n. 18. Moreover, the Commissioner cites no authority suggesting that Levy is not entitled to choose which expenses he will recognize for tax purposes given that his accounting method imposes a limit on the amount of expenses he may recognize. We therefore affirm the Tax Court's allocation.

### IV. *Limitation of Deductions to Working Interest*

The Commissioner also argues that Levy may deduct only 75% of IDCs incurred on wells drilled on the Baker lease. Levy agrees, as he is only entitled to deduct IDCs allocable to his working interest. *See* Treas.Reg. § 1.612–4(a). Levy argues, however, that the Tax Court implicitly found that 75% of the IDCs incurred by Levy exceeded his cash investment in the Baker lease joint venture. We agree with Levy's reading of the Tax Court opinion. The Tax Court stated:

> [S]ufficient IDCs have been incurred to entitle petitioner a deduction to the extent of his cash investment.... Thus, we allow a deduction for the full amount of petitioner's cash outlay. We make this conclusion keeping in mind petitioner acquired a 75 percent fractional interest in wells drilled on the Baker lease.

Tax Ct.Mem.Dec. at 82–1856 n. 14. This interpretation is fully consistent with the court's finding that "[a]ctual intangible drilling costs on those wells equaled or exceeded petitioner's cash outlay." *Id.* at 82–1854.

### V. *Conclusion*

The judgment of the Tax Court is AFFIRMED.