TEMPLE W. SEAY, INDIVIDUALLY AND AS SOLE BENEFICIARY OF THE ESTATE OF ELIZABETH S. SEAY, Deceased, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Seay v. Commissioner
Docket No. 8979-72
United States Tax Court
T.C. Memo 1974-305; 1974 Tax Ct. Memo LEXIS 14; 33 T.C.M. (CCH) 1406; T.C.M. (RIA) 740305; December 9, 1974, Filed. Robert E. Manuel, for the petitioner. Randolph D. Mason, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: * Respondent has determined a deficiency of $39,235.08 in petitioners' 1963 Federal income taxes. [1] The sole issue presented is whether the petitioner actually or constructively received legal fees in the amount of $75,000 in 1963. [2]
*15 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. Temple W. Seay (hereinafter referred to as petitioner or Seay) was a resident of Washington, D.C. at the time the petition was filed. The petition was also filed on behalf of the Estate of Elizabeth S. Seay, petitioner's deceased wife. [3] The joint return for the period involved was filed with the district director of internal revenue at Baltimore, Maryland. The petitioner during all relevant periods was a cash basis taxpayer. Earl J. Carroll (hereinafter referred as Carroll) conducted a law practice in Germany from 1945 through 1954. In 1961 the Commissioner determined a deficiency in Carroll's income tax for some of those years in the total amount of $920,530.76. After extensive proceedings in this and other Federal courts it was ordered and decided by this Court on February 21, 1963, pursuant to agreement of the parties, that there was a deficiency in only *16 one of the years in the amount of $70,000. Carroll was represented in the court proceedings as well as the proceedings on the administrative level by the petitioner, an experienced tax attorney. Carroll paid the petitioner a retainer of $2,500 in 1959 and agreed to pay petitioner the balance of his legal fees, which were left undetermined at that time, at the conclusion of the proceedings. In July 1961, which was about the time that Seay prepared a petition to the Tax Court for a redetermination of Carroll's deficiencies with respect to amounts earned by Carroll in the practice of law in Germany, Seay asked Carrol for a loan of $100,000. Petitioner wanted the loan to permit his wholly-owned corporation, Metro-WBOF, Inc., (hereinafter WBOF) to discharge a corporate obligation at a discount. Carroll agreed to loan the $100,000 to petitioner. A written loan agreement was executed on July 7, 1961 "between Earl J. Carroll, First Party, and Temple W. Seay, together with his wholly owned corporation, Metro-WBOF, Inc., Second Party." On the date of the agreement Carroll authorized his bank to deliver a cashier's check to petitioner in the amount of $50,000. The cashier's check *17 was made payable to both WBOF and petitioner upon the instructions of petitioner to the bank manager. Sometime later Carroll received from petitioner promissory notes issued by WBOF for the $50,000 which Carroll had advanced to petitioner. Upon Carroll's request for petitioner's personal notes for this advance, petitioner promised to substitute his own note for WBOF's notes when the second $50,000 advance was made. On October 3, 1961, relying on petitioner's promises, Carroll mailed to petitioner separate checks in the amount of $20,000 and $30,000. These checks were made payable to petitioner only. On the back of the checks Carroll typed "Loan per agreement dated July 7, 1961." The checks were endorsed by petitioner and deposited by him in WBOF's bank account. Subsequent to October 3, 1961, petitioner tendered to Carroll a promissory note in the amount of $100,000 which was backdated to July 7, 1961 and signed "Metro-WBOF, Inc., Leo Hoarty, Vice-Pres." Petitioner endorsed this note personally. On December 27, 1961 petitioner executed and mailed to Carroll his personal chattel mortgage on 50 percent of the common capital stock of WBOF to secure payment of the $100,000 note *18 made by WBOF and endorsed by him. The first installment of $25,000 on the $100,000 note due July 1, 1962 was not paid when it was due. No action was taken by Carroll to collect this installment at that time because Carroll knew the fee would be offset against it. Petitioner's fee for legal services was fixed at $75,000 on January 16, 1963. The agreement provided that petitioner's fee would be paid by offsetting credits against the $100,000 loan over a three-year period. The effective date of the agreement concerning payment of the fee was the date of entry of the decision by the Tax Court in Carroll's case. In an Agreement of Assignment executed after January 16, 1963 by petitioner and his wife the $75,000 fee was contributed to the capital of WBOF. In the financial statement for WBOF for the year ended December 31, 1962, WBOF reduced its liability to Earl Carroll from $100,000 to $25,000. [4] In a letter to Carroll of March 4, 1964, petitioner proposed a method of paying "a portion of the remaining $25,000 owing to you," indicating his understanding that the $75,000 legal fee had already been setoff against the debt owed Carroll. *19 The $100,000 note was never surrendered to petitioner nor was a notation indicating partial payment ever made. However, in 1965 Carroll attempted to collect the final $25,000 installment from petitioner and informed petitioner at that time that he had fully offset the $75,000 fee against the loan over a three-year period. Furthermore, Carroll claimed on his Federal income tax returns deductions for the legal fees in the amount of $25,000 for each of the years 1963, 1964 and 1965. OPINION The only issue is whether the petitioner actually or constructively received legal fees in the amount of $75,000 in 1963. [5] Petitioner contends he never actually received the income because he never received cash. Although petitioner never received cash, he realized income from the discharge of his indebtedness to Carroll. [6]
*20 When an individual renders services for a creditor who in return cancels a debt, the debtor realizes income to the extent of the cancellation. [7] Income is not, however, realized until the liability is released. Whether the debt has been discharged is dependent on the substance of the transaction. Mere formalisms arranged by the parties are not binding in the application of the tax laws. Commissioner v. Court Holding Co., 324 U.S. 331 (1945). Consequently, the surrender or failure to surrender a note is not determinative of the release of liability. Similarly, an agreement to release the liability over a three-year period is not conclusive when it is clear that the discharge was effective immediately. Mutual debts do not automatically extinguish each other but a setoff by agreement operates as payment. Bailey v. Commissioner, 103 F.2d 448 *21 (C.A. 5, 1939). Even if the debts were not incurred on the credit of each other, an agreement to setoff would operate as payment. Petitioner and Carroll agreed to payment solely by setoff of one debt against the other. Therefore, petitioner received income to the extent of the setoff, i.e. $75,000. The question of when the setoff was effective remains. An agreement to cancel a debt in the future is not sufficient to discharge the indebtedness immediately if the cancellation is contingent upon future events. Walker v. Commissioner, 88 F.2d 170 (C.A. 5, 1937), certiorari denied 302 U.S. 692 (1937). Although the agreement between petitioner and Carroll provided for setoff over three years, the cancellation was not dependent on any further action by petitioner. After the agreement in 1963 was reached, no obligation to repay any portion of the $75,000 existed. The 1963 fee agreement cancelled $75,000 of petitioner's indebtedness to Carroll. The petitioner treated the indebtedness as effectively cancelled in 1963. He assigned the right to the $75,000 fee *22 to WBOF in 1963, and caused WBOF to reduce its liability to Carroll by $75,000 in one year rather than over a three-year period. Subsequent negotiations concerning repayment of the remaining $25,000 of the loan demonstrate that both the petitioner and Carroll considered $75,000 of the principal to have been repaid by the agreement to offset petitioner's legal fee in 1963. The agreement between petitioner and Carroll is similar to the agreement in United States v. Ingalls, 399 F.2d 143 (C.A. 5, 1968), certiorari denied 393 U.S. 1094 (1969). In Ingalls, the taxpayer's corporate employer purchased his employment contract and the taxpayer agreed to pay his outstanding indebtedness to the corporation. The settlement provided for payments in equal amounts by both the taxpayer and the corporation to be made over a ten-year period. The agreement further provided that if the taxpayer failed to make payment, the corporation could credit the indebtedness with such payments. The Fifth Circuit, ignoring the formality for the subsequent exchange of checks and noting that the agreement required no further action by the taxpayer to discharge the debt, concluded: *23 The substance of the transaction is that a disputed claim was settled, with payment being made by way of a discharge of indebtedness. The discharge was complete for income tax purposes in 1961. Thus the discharged indebtedness was income in 1961. Id. at 147. Under section 61(a) (12), [8] petitioner realized income from discharge of his indebtedness to Carroll when the debt was extinguished. We find that the debt was extinguished in 1963 and petitioner had no further obligation to repay the $75,000. Petitioner therefore realized $75,000 in income in 1963 from the discharge of his indebtedness without regard to the rituals of subsequent check exchanges or notations reflecting the agreement reached in 1963. Since the petitioner realized $75,000 from the discharge of his indebtedness to Carroll in 1963, it is unnecessary to consider the issue of constructive receipt. Decision will be entered for the respondent. Footnotes
*. Pursuant to a notice of reassignment sent to the parties, and to which no objections were filed, this case was reassigned on July 12, 1974, from Judge Graydon G. Withey, who heard the case, to Judge Richard C. Wilbur↩ for disposition. 1. All references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
2. Contingent on a decision adverse to petitioner on this issue, the petition alternatively claimed the amount was deductible as a business bad debt. However, no evidence regarding the bad debt issue was presented. Consequently, the petitioner has failed to carry the burden of proof on that issue. Rule 142, Tax Court Rules of Practice.↩
3. The Estate of Elizabeth S. Seay is a petitioner in this case solely by reason of the fact that Elizabeth filed a joint return with her husband for the year 1963. ↩
4. Although the assignment indicates it was effective in 1962, the agreement concerning the fee was not reached until 1963. In addition, the petitioner testified that the assignment was executed contemporaneously with the January 16, 1963 agreement. Similarly, the reduction in WBOF's liability to Carroll, although recorded in 1962, could only be effective after the 1963 agreement. ↩
5. The amount of the medical deduction is dependent on our decision of this issue. Sec. 213, I.R.C. 1954↩. Therefore, it is not separately considered. 6. Sec. 61, I.R.C. 1954 provides in pertinent part: (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * * (12) Income from discharge of indebtedness; ↩
7. Sec. 1.61-12(a), Income Tax Regs.↩
8. Supra, note 5. ↩