T.C. Memo. 2020-74

UNITED STATES TAX COURT

THOMAS M. MCCARTHY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5911-18.                          Filed June 3, 2020.

Thomas M. McCarthy, pro se.

<u>Samuel M. Warren</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined for petitioner's 2015 taxable

year a $7,347 deficiency and a $1,469 accuracy-related penalty under section

6662(a).[1]  The issues for decision are:  (1) whether petitioner is entitled to

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] deductions for qualified residence interest with respect to real properties in New York City, New York, and Hermosa Beach, California, and (2) whether petitioner is liable for an accuracy-related penalty under section 6662.

FINDINGS OF FACT

Petitioner is a certified public accountant (C.P.A.) and holds a master's degree in business administration (M.B.A.). For many years he has been friends with John Q. Rodgers, an attorney, C.P.A., and tax return preparer. Over the years they have consulted on various business matters and engaged in recreational activities together, including scuba diving trips around the world.

In 1991 Mr. Rodgers purchased as his residence a four-story beach house in Hermosa Beach, California (Hermosa Beach property). From about 1999 to 2003 petitioner resided at the Hermosa Beach property and paid rent to Mr. Rodgers.

In 2005 petitioner moved to New York City, New York. He later bought a co-op unit there (New York City property) and resided in it until 2014, when his job ended unexpectedly. He then moved to Minnesota, where he worked as a consultant at Securian Financial Group. Throughout 2015 petitioner continued to

[1](...continued)
Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

[*3] reside and work in Minnesota while renting out the New York City property. He did not live at the New York City property in 2015.

After moving to New York City in 2005, petitioner would occasionally visit California and stay at the Hermosa Beach property, for instance during spring break and over the Fourth of July and Thanksgiving holidays. Petitioner testified that in 2010 he purchased from Mr. Rodgers a 32.5% interest in the Hermosa Beach property, financed by an interest-bearing loan from Mr. Rodgers. During 2015 petitioner made no cash payments to Mr. Rodgers with respect to this purported loan and made no monetary contributions for taxes, insurance, or maintenance of the Hermosa Beach property.

In 2015, with respect to the Hermosa Beach property, Mr. Rodgers received $96,000 in rental income from his niece, who was also his law firm's office manager.

Mr. Rodgers prepared petitioner's Form 1040, U.S. Individual Income Tax Return, for the 2015 taxable year. The return indicated that petitioner's home address was a street address in Roseville, Minnesota (Minnesota address). On the return petitioner elected a filing status of married filing separately, identifying his spouse as Catherine A. Nelson. The return reports wage income but no interest or rental income for petitioner. On Schedule A, Itemized Deductions, petitioner, a

[*4] cash basis taxpayer, reported total mortgage interest paid of $48,514, which is the sum of: (1) $18,712 as reported on Forms 1098, Mortgage Interest Statement, with respect to the New York City property[2] and (2) $29,802, described on the Schedule A with respect to the Hermosa Beach property as having been paid to "RODGERS".

Also attached to petitioner's 2015 Form 1040 was Schedule E, Supplemental Income and Loss, on which he reported that in 2015 the New York City property generated rental income of $33,660 and total expenses of $46,598, for a net loss of $12,938, which he reported as a suspended passive loss from a "CO-OP". He reported that during 2015 he held the New York City property for 365 "Fair Rental Days" with no personal use days.

By notice of deficiency, respondent disallowed petitioner's claimed Schedule A itemized deduction of $48,514 for mortgage interest paid. Respondent treated $18,712 of the reported mortgage interest paid (the portion that petitioner reported as paid in connection with the New York City property) as properly reported on Schedule E rather than on Schedule A. Accordingly, respondent allowed an additional itemized deduction of $18,712 for mortgage interest on

---

[2]As reflected on two Forms 1098, each addressed to petitioner at the Minnesota address, this $18,712 amount is made up of a $16,664 payment to Mortgage Service Center and a $2,048 payment to Jones Street Apts., Inc.

[*5] Schedule E (thereby increasing by that amount the suspended passive loss reported on petitioner's Schedule E). The notice of deficiency disallowed in its entirety the $29,802 mortgage interest reported as paid to "RODGERS" because, according to the explanation in the notice of deficiency, petitioner had failed to respond to respondent's request for supporting information. In addition respondent determined that for 2015 petitioner is liable for a $1,469 accuracy-related penalty under section 6662(a) as a result of one or more of: (1) negligence or disregard of rules or regulations, (2) a substantial understatement of income tax, (3) a substantial valuation misstatement, or (4) a transaction lacking economic substance.

On March 26, 2018, petitioner timely filed his petition, showing the Minnesota address as his mailing address and indicating Minnesota as his place of residence.

OPINION

I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer generally bears the burden of proving that the determinations are incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111,

[*6] 115 (1933).³ In particular, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The taxpayer bears the burden of substantiating the amount and purpose of each expense claimed as a deduction. Higbee v. Commissioner, 116 T.C. 438, 440 (2001); Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

## II. Qualified Residence Interest

As a general rule, a taxpayer may claim a deduction for "all interest paid or accrued within the taxable year on indebtedness." Sec. 163(a). Indebtedness means an unconditional and legally enforceable obligation for the payment of money. Autenreith v. Commissioner, 115 F.2d 856, 858 (3d Cir. 1940), aff'g 41 B.T.A. 319 (1940); Linder v. Commissioner, 68 T.C. 792, 796 (1977).

Section 163(h) prohibits an individual taxpayer from claiming a deduction for personal interest paid or accrued during the taxable year. As an exception to this rule, a deduction is generally allowable for "qualified residence interest", which includes "acquisition indebtedness" with respect to any qualified residence

---

³Petitioner does not contend and the record does not establish that he has met the requirements of sec. 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

**[*7]** of the taxpayer. Sec. 163(h)(2)(D), (3)(A)(i). Acquisition indebtedness is defined as debt that is used to acquire, construct, or substantially improve a "qualified residence" and that is secured by that residence. Sec. 163(h)(3)(B)(i). For this purpose, "qualified residence" means:

> (I) the principal residence (within the meaning of section 121) of the taxpayer, and

> (II) 1 other residence of the taxpayer which is selected by the taxpayer for purposes of this subsection for the taxable year and which is used by the taxpayer as a residence (within the meaning of section 280A(d)(1)).

Sec. 163(h)(4)(A)(i).

On his 2015 Federal income tax return petitioner did not "select" either the New York City property or the Hermosa Beach property as his second residence, nor did he indicate on his return which of these properties he regarded as his principal residence. Neither the Code nor the regulations fix the time or manner by which a taxpayer makes a selection of the "1 other residence" under section 163(h)(4)(A)(i)(II). Accordingly, making the selection in litigation is acceptable. Dunford v. Commissioner, T.C. Memo. 2013-189; Lawler v.Commissioner, T.C. Memo. 1995-26.

On brief petitioner asserts that the New York City property was his "primary residence" in 2015. From this we infer that he means to treat the New York City

[*8] property as his principal residence and to select the Hermosa Beach property as his second residence. We proceed on that assumption. We do not get far, however, before encountering another threshold issue.

On his 2015 Federal income tax return petitioner elected a filing status of married filing separately. Pursuant to section 163(h)(4)(A)(ii)(II), if a married couple does not file a joint return for the taxable year, each of them "shall be entitled to take into account 1 residence unless both individuals consent in writing to 1 individual taking into account the principal residence and 1 other residence." The record does not reflect that petitioner and his wife both consented in writing to petitioner's taking mortgage interest deductions with respect to more than one residence. Consequently, petitioner is precluded from claiming mortgage interest deductions with respect to both the New York City property and the Hermosa Beach property. The Code does not make clear, however, in these circumstances which of these properties, if either, should be considered the "1 residence" that petitioner may take into account pursuant to section 163(h)(4)(A)(iii). We need not linger over this matter, however, for as explained below we conclude on other grounds that petitioner is not entitled to the claimed Schedule A mortgage interest deduction with respect to either the New York City property or the Hermosa Beach property.

**[\*9]**  A.  <u>The New York City Property</u>

Under section 163(h)(4)(A)(i)(I) "principal residence" has the same meaning as under section 121.  Section 121 does not define the term "principal residence" but, subject to various limitations, allows for the exclusion of gain on the sale or exchange of property "owned and used by the taxpayer as the taxpayer's principal residence".  Sec. 121(a).

Pursuant to the regulations under section 121, whether a taxpayer uses a property as his principal residence depends upon all the facts and circumstances. Sec. 1.121-1(b)(1), Income Tax Regs.  If a taxpayer alternates residency between two properties, "the property that the taxpayer uses a majority of the time during the year ordinarily will be considered the taxpayer's principal residence."  <u>Id.</u> subpara. (2).

The record shows that during 2015 petitioner did not use the New York City property as his residence at all, much less for a majority of the time--he resided in Minnesota in 2015, and the New York City property was rented for the entire year.

The mere fact that a taxpayer rents out a property after moving out does not necessarily mean that the property has ceased to be the taxpayer's principal residence.  <u>Thomas v. Commissioner</u>, 92 T.C. 206, 241-242 (1989) (citing section 1.1034-1(c)(3)(i), Income Tax Regs.) (construing the definition of "principal

[*10] residence" for purposes of former section 1034).[4] The lack of a ready market for selling a property may be taken into account in determining whether the property remained the taxpayer's principal residence after he moved out; if the taxpayer's efforts to sell the property demonstrate that his dominant motive was to sell the property at the earliest possible date instead of holding it for rental income, the property would not necessarily cease to qualify as the taxpayer's principal residence. See Clapham v. Commissioner, 63 T.C. 505, 511-512 (1975); Green v. Commissioner, T.C. Memo. 1992-439.

Petitioner asserts that renting his New York City property was a financial necessity for him in 2015 because a downturn in the real estate market during the 2008 financial crisis had caused the New York City property to be worth significantly less than he had paid for it. He asserts that he sold the property in 2016. Petitioner has offered no evidence, however, as to what he paid for the New York City property (or exactly when he bought it), what he sold it for, what efforts

---

[4]Former sec. 1034, which provided for rollover of gain on the sale of a principal residence, was repealed in 1997 and replaced in the same act by sec. 121, which provides for exclusion of specified gains from the sale of a principal residence. Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 312(a) and (b), 111 Stat. at 836, 839. In the same act a conforming change was made to sec. 163(h)(4)(A)(i)(I), which had previously defined "principal residence" by cross-reference to sec. 1034, by substituting "section 121" for "section 1034". Id. sec. 312(d)(1), 111 Stat. at 839.

[*11] he made to sell the property after he moved out in 2014, or to what extent market conditions might have created a bar to his selling the New York City property when he moved out of it in 2014.  On this record we are unconvinced that petitioner's dominant motive was to sell the New York City property at the earliest date instead of renting it.

In addition to the taxpayer's use of the property, relevant factors in determining a taxpayer's principal residence include, but are not limited to: (1) the taxpayer's place of employment; (2) the principal place of abode of the taxpayer's family members; (3) the address listed on the taxpayer's Federal and State tax returns, driver's license, automobile registration, and voter registration card; (4) the taxpayer's mailing address for bills and correspondence; (5) the location of the taxpayer's banks; and (6) the location of religious organizations and recreational clubs with which the taxpayer is affiliated.  Sec. 1.121-1(b)(2), Income Tax Regs.

Petitioner has failed to show that any of these factors, or any other specific factors, support a conclusion that the New York City property was his principal residence during 2015.  His place of employment during 2015 was in Minnesota. He testified that he lived there "with my parents in a rental."  On brief he asserts that this was a "transient" living arrangement.  This assertion is called into

[*12] question, however, by the fact that when he petitioned this Court in 2018, he was still using the Minnesota address as his place of residence. Except for petitioner's reference to his parents living in Minnesota, the record is silent as to the principal place of residence in 2015 of petitioner's family members, including his wife.

Petitioner listed the Minnesota address on his 2015 Federal income tax return. Similarly, both of petitioner's 2015 Forms 1098 for the New York City property used the Minnesota address as his mailing address. Petitioner offered no evidence about the mailing address on any bills or other correspondence or on his driver's license, automobile registration, or voter registration card. He also offered no evidence about the location of any religious organizations or recreational clubs with which he might have been affiliated in 2015.

Petitioner has failed to carry his burden to show that the New York City property was his principal residence in 2015. As previously noted, he has not selected the New York City property as a second residence under section 163(h)(4)(a)(i)(II), nor has he shown that he would be entitled to do so. In any event the New York City property flunks the test under section 163(h)(4)(A)(i)(II), which requires that a second residence be used as a residence within the meaning of section 280A(d)(1). For purposes of section 280A(d)(1) a dwelling unit is used

**[\*13]** by the taxpayer as a residence during the taxable year if the taxpayer uses it for personal purposes for more than the greater of (1) 14 days during the taxable year or (2) 10% of the number of days during the taxable year that the unit is rented at a fair rental value. Because petitioner rented out the New York City property for all 365 days in 2015, it was not used as his residence within the meaning of section 280A(d)(1) and hence is not a qualified residence within the meaning of section 163(h)(4)(A)(i)(II).

Accordingly, we sustain respondent's determination disallowing the $18,712 of the reported mortgage interest deduction claimed on petitioner's 2015 Schedule A with respect to the New York City property.[5]

## B. The Hermosa Beach Property

Petitioner testified that in 2010 he purchased from Mr. Rodgers, for $600,978, a 32.5% interest in the Hermosa Beach property. He testified that he had his own separate entrance to the Hermosa Beach property, his own bedroom and bathroom on a separate floor of the property, and use of the common areas of the home. He further testified that when he made this purchase, Mr. Rodgers owed him $150,000. Petitioner asserts that his purchase of an interest in the

---

[5]As respondent determined in the notice of deficiency, this deduction is instead allowable on petitioner's 2015 Schedule E.

[*14] Hermosa Beach property was structured as a "seller financed note" and that during 2015 his required payments on the note, including $29,802 of interest, were not made in cash but rather were "offset" by his forgiving equivalent amounts of Mr. Rodgers' debt to him. On this basis he claims a mortgage interest deduction of $29,802 with respect to the Hermosa Beach property.

Attempting to show the existence of acquisition indebtedness, at trial petitioner offered into evidence photocopies of three inter-related documents allegedly created as part of a single conveyance: (1) a document titled "DEED OF TRUST", purportedly signed by petitioner and Mr. Rodgers on January 13, 2010, and purportedly securing a note from petitioner to Mr. Rodgers and requiring monthly payments and full payment by January 1, 2035, of $600,978 principal plus accrued interest as stated in the cross-referenced note; (2) a document titled "PROMISSORY NOTE SECURED BY THE DEED OF TRUST", purportedly signed by petitioner on January 13, 2010, and by Mr. Rodgers on January 18, 2010, and stating principal of $600,978 with interest at the rate of 6.712%, to be paid in monthly installments of not less than $3,500 per month; and (3) a document titled "AGREEMENT FOR THE CONVEYANCE OF AN INTEREST IN REAL PROPERTY SUBJECT TO A SELLER FINANCED MORTGAGE",

**[\*15]** purportedly signed by petitioner and Mr. Rodgers on January 13, 2010, and cross-referencing the aforementioned purported deed of trust and promissory note.

The aforementioned deed of trust includes an acknowledgment form indicating that the document was notarized on December 16, 2004, and that the notary's commission expired January 28, 2007. At trial neither petitioner nor Mr. Rodgers, who testified as petitioner's witness, was able to explain why the purported deed of trust shows that they both signed it January 13, 2010, but that it was notarized in 2004 by a notary whose commission expired in 2007. Furthermore, neither petitioner nor Mr. Rodgers was able to explain adequately the provenance of any of these documents.[6] The unexplained inclusion of an obviously fictitious acknowledgment form as part of the deed of trust, as well as the lack of a clear explanation as to where these photocopied documents even came from, calls into question the genuineness and trustworthiness of these three

---

[6]Petitioner testified that these documents "did not come from my records", that "[a]ll documents have been maintained at someone else's office", that "some were in a draft form, and there's some noted inconsistencies", and that some of the documents were "templated copies". Mr. Rodgers testified that he "couldn't say" whether the documents were from his files or from petitioner's but that "they would come from either mine or * * * [petitioner's]." We find it anomalous that neither petitioner (a C.P.A. and an M.B.A.) nor Mr. Rodgers (a lawyer and a C.P.A.), both parties to the purported conveyance, would be more attentive to the recordkeeping of documents purporting to convey a valuable property interest in the Hermosa Beach property.

**[\*16]** interrelated documents. Accordingly, the Court sustained respondent's authenticity objections to them and excluded them from evidence.

In any event, even if the aforementioned documents were to be received into evidence, the record would still be inadequate to show petitioner's entitlement to the claimed mortgage interest deduction with respect to the Hermosa Beach property for at least three independently sufficient reasons, as more fully explained below: (1) petitioner's purported debt to Mr. Rodgers was not "secured debt" within the meaning of the relevant regulations so as to constitute acquisition indebtedness; (2) petitioner has not shown that the Hermosa Beach property was his qualified residence in 2015; and (3) petitioner has not shown that as a cash basis taxpayer he actually paid any qualified residence interest with respect to the Hermosa Beach property in 2015.

### 1. Secured Debt

As noted, qualified residence interest includes "acquisition indebtedness" with respect to any qualified residence of the taxpayer. Sec. 163(h)(2)(D), (3)(A)(i). Acquisition indebtedness is defined as debt that is used to acquire, construct, or substantially improve a qualified residence and that is "secured by such residence." Sec. 163(h)(3)(B)(i). Pursuant to section 1.163-10T(o)(1),

**[*17]** Temporary Income Tax Regs., 52 Fed. Reg. 48417 (Dec. 22, 1987), "secured debt" means:

> a debt that is on the security of any instrument (such as a mortgage, deed of trust, or land contract)--
>
> (i) That makes the interest of the debtor in the qualified residence specific security of the payment of the debt,
>
> (ii) Under which, in the event of default, the residence could be subjected to the satisfaction of the debt with the same priority as a mortgage or deed of trust in the jurisdiction in which the property is situated, and
>
> (iii) That is recorded, where permitted, or is otherwise perfected in accordance with applicable State law.

Even if we were to assume for the sake of argument that petitioner's purported debt to Mr. Rodgers satisfied the first criterion cited above for secured debt, it nevertheless would fail to qualify as secured debt under the other two criteria. Under California State law, an unrecorded conveyance of real property is invalid against a subsequent purchaser who lacks notice of it. Cal. Civ. Code secs. 1214, 1217 (West 2019); Robertson v. Peters (In re Weisman), 5 F.3d 417, 420 (9th Cir. 1993). Pursuant to Cal. Civ. Code sec. 1170 (West 2019): "An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, it is deposited in the Recorder's office, with the proper officer, for record."

[*18] Petitioner concedes that neither the purported loan agreement nor the purported deed of trust was recorded. Consequently, in the event of a default the unrecorded deed of trust would be insufficient to subject petitioner's purported interest in the Hermosa Beach property to the satisfaction of the debt with the same priority as a recorded mortgage or deed of trust because the unrecorded deed of trust would be valid only against a third person having notice of it. See Cal. Civ. Code secs. 1214, 1217. Therefore, petitioner has not satisfied the second criterion for secured debt under the regulations. See sec. 1.163-10T(o)(1)(ii), Temporary Income Tax Regs., supra.

Furthermore, because the deed of trust was not recorded, in order to satisfy the third criterion for secured debt under the regulations, petitioner must show that the deed of trust was "otherwise perfected in accordance with applicable State law." See id. subdiv. (iii). Petitioner has not shown or even alleged that the deed of trust was perfected in any other way under applicable California law or indeed that there was any such other way to perfect the deed of trust under California law.

Consequently, petitioner has failed to show that his purported debt to Mr. Rodgers was secured debt so as to constitute acquisition indebtedness pursuant to section 163(h)(3)(B)(i).

**[*19]**         2. <u>Qualified Residence</u>

Petitioner does not expressly contend, and the record does not show, that the Hermosa Beach property was his primary residence in 2015. Consequently, to be considered a qualified residence within the meaning of section 163(h)(4)(A)(i)(II), the Hermosa Beach property was required to be used by petitioner during 2015 "as a residence (within the meaning of section 280A(d)(1))." Pursuant to section 280A(d)(1) a dwelling unit is used as a residence if the taxpayer uses it for "personal purposes" for more than the greater of 14 days or 10% of the number of days during the taxable year that the unit is rented at a fair rental value.

As for the use of the Hermosa Beach property during 2015, the record establishes only that Mr. Rodgers received $96,000 of rent from his niece during 2015. Mr. Rodgers testified that he did not rent the whole property to her but that she just had "one of the bedrooms upstairs with me." He could not recall the lease term or the rental rate because "[i]t was a long time ago". We observe, however, that under the most conservative assumption, the rent received from Mr. Rodgers' niece was no less than $8,000 per month ($96,000 annual rental receipts divided by 12 months). The record leaves us doubtful that Mr. Rodgers' niece was renting only a single bedroom at this rate and causes us to question whether her rental of the property did not cover the entire property and consequently whether petitioner

[*20] used his purported interest in the Hermosa Beach property for more than 10% of the number of days during 2015 that it was rented at a fair market rental, pursuant to section 280A(d)(1)(B).

In any event, even if we were to assume for the sake of argument that petitioner's purported interest in the Hermosa Beach property was not rented out in 2015, pursuant to section 280A(d)(1)(A) petitioner is required to show that he used it for personal purposes for more than 14 days in 2015. The record does not establish how many days, if any, petitioner used the Hermosa Beach property for personal purposes in 2015. When asked at trial whether he used the Hermosa Beach property in 2015, petitioner responded that he could not recall exact dates and had no records, but he asserted: "I was at the property at some point in 2015, yeah."

Petitioner has failed to show that his use of the Hermosa Beach property in 2015 satisfied the requirements of section 280A(d)(1). Accordingly, petitioner has failed to show that the Hermosa Beach property was his qualified residence for 2015. For this additional reason, he is not entitled to deduct qualified residence interest with respect to the Hermosa Beach property for 2015.

**[*21]**         3. <u>No Interest Paid in Cash or Equivalent</u>

A taxpayer is allowed a deduction for qualified residence interest paid or accrued during the taxable year. <u>See</u> sec. 163(h)(3)(A). A cash basis taxpayer, such as petitioner, cannot deduct an expense incurred unless he paid it during the taxable year in cash or its equivalent. <u>See</u> <u>Don E. Williams Co. v. Commissioner</u>, 429 U.S. 569, 577-578 (1977); sec. 1.461-1(a)(1), Income Tax Regs.

Petitioner did not make any interest payments to Mr. Rodgers in cash in 2015 (or at any other time insofar as the record shows). Petitioner suggests that he instead made interest payments to Mr. Rodgers in cash equivalents, asserting on brief that his payments to Mr. Rodgers were "offset through other transactions with Mr. Rodgers for cash". He asserts on brief that Mr. Rodgers had a preexisting debt to him of $150,000 and that "offsetting" their respective obligations to each other "made better sense than trading checks back and forth. * * * I have not paid cash for my interest as there has been no reason to round trip cash between bank accounts simply for the purpose of producing a paper trail."

There are a variety of problems with petitioner's argument. For one thing petitioner has been inconsistent in treating these "offsetting" transactions as generating only interest deductions but no interest income to himself. According to evidence offered by petitioner, Mr. Rodgers' "payment" to him in 2015

[*22] included $12,974 of interest.  Yet petitioner reported no interest income on his 2015 Federal income tax return.  Particularly considering petitioner's professional status as a C.P.A., we view skeptically his treating the purported "offsetting transactions" as generating only large deductions and no income to himself.

More fundamentally, on this record we are unconvinced that there was any bona fide debt from Mr. Rodgers to petitioner.  In his testimony about the $150,000 purported debt from Mr. Rodgers, petitioner was evasive and vague as to exactly what it was for.  He testified that over some indefinite number of years before 2010 Mr. Rodgers had run up a large debt with him.  He testified that he "suppose[d]" that about $40,000 of this amount represented compensation for his C.P.A. consulting services to Mr. Rodgers over the years, that some additional unspecified part represented gambling losses that Mr. Rodgers had incurred playing backgammon with petitioner over the years, and that some other unspecified part represented travel expenses that petitioner had allegedly fronted for his and Mr. Rodgers' scuba diving trips together around the world.  Petitioner testified that "there's always been a running tally" and that he and Mr. Rodgers negotiated to arrive at a "round number" of $150,000.

**[\*23]** Petitioner offered into evidence a photocopy of a document captioned "Promissory Note" dated December 28, 2009, signed only by Mr. Rodgers. This document states that Mr. Rodgers promises to pay petitioner the principal sum of "$150,00" (rather than $150,000) at an interest rate of 12.75%, compounded annually.[7] Mr. Rodgers testified that he had no specific recollection of ever delivering a copy of this promissory note to petitioner.

The existence of an obligation is the sine qua non of a debt. Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), aff'd, 192 F.2d 391 (2d Cir. 1951). The giving of a note or other evidence of indebtedness which may be legally enforceable is not in itself conclusive of the existence of a bona fide debt. Id. As stated in Estate of Maxwell v. Commissioner, 98 T.C. 594, 605 (1992), aff'd, 3 F.3d 591 (2d Cir. 1993): "[A] stated obligation to pay a fixed sum of money may be disregarded as having no value where the facts show that the parties did not contemplate that the obligation would be met."

Petitioner has failed to establish that there was any bona fide debt from Mr. Rodgers to himself. The purported promissory note states that principal and accrued interest will be payable in monthly installments, but it does not otherwise

---

[7]Under California usury law, the maximum allowable interest rate for a nonexempt lender is generally 10%. See Cal. Const. art. 15, sec. 1.

**[\*24]** state a term or specify the amount of required monthly installments. The note is unsecured. Moreover, the parties to the note have not conducted themselves as if there were a bona fide debt. Insofar as the record shows, Mr. Rodgers has never made any actual interest payments on the note, nor has petitioner ever made any demand for payment.[8] Furthermore, petitioner's own evidence shows that Mr. Rodgers' "payments" to him have not followed any specific repayment schedule or pattern, even though the note calls for payments in monthly installments.[9] These considerations weigh against any finding of bona fide debt. See Calloway v. Commissioner, 135 T.C. 26, 37 (2010), aff'd, 691 F.3d 1315 (11th Cir. 2012); Estate of Rosen v. Commissioner, T.C. Memo. 2006-115.

On the basis of all the evidence in the record, we conclude that petitioner and Mr. Rodgers never intended to impose any real liability on Mr. Rodgers to

---

[8]Although petitioner claims that there were "offsetting" transactions, the evidence does not establish that the amounts that petitioner purportedly owed Mr. Rodgers and the amounts that Mr. Rodgers purportedly owed petitioner under their respective purported notes to one another would have been equal in any particular period so as to exactly "offset" one another.

[9]According to a document petitioner offered into evidence, Mr. Rodgers made "1" payment per year for each of the years 2010, 2011, 2012, 2014, and 2015, and no payment for 2013, even though the promissory note calls for monthly payments. The amounts of these purported payments fluctuate without seeming adherence to any particular schedule; the document shows payments of $40,157, $34,193, 30,014, zero, $19,500, and $29,802 for each of the years 2010, 2011, 2012, 2013, 2014, and 2015, respectively.

[*25] repay the purported $150,000 debt.  Rather, Mr. Rodgers' execution of the promissory note was simply a device to effect petitioner's preconceived plan to create an artificial tax benefit by means of a paper liability without substance.

"[U]ntil a cash basis taxpayer suffers an economic detriment, i.e., an actual depletion of his property, he has not made a payment which will give rise to an expense deduction."  Saviano v. Commissioner, 80 T.C. 955, 964 (1983) (quoting Rife v. Commissioner, 356 F.2d 883, 889 (5th Cir. 1966), rev'g and remanding 41 T.C. 732 (1964)), aff'd, 765 F.2d 643 (7th Cir. 1985).  On the basis of all the evidence we conclude that no actual obligation was intended or created with respect to Mr. Rodgers' promissory note and that petitioner suffered no economic detriment so as to give rise to any expense deduction.  For this additional reason, petitioner is not entitled to deduct qualified residence interest with respect to the Hermosa Beach property for 2015.

On brief petitioner asserts, without supporting evidence, that on two other occasions "the taxing authorities" reviewed the validity of his claimed interest deduction with respect to the Hermosa Beach property and deemed his documentation "sufficient for the purpose of the tax authorities understanding and acceptance of the transaction."  These vague assertions are unavailing.  Each taxable year stands on its own and must be separately considered.  See United

**[\*26]** <u>States v. Skelly Oil Co.</u>, 394 U.S. 678, 684 (1969). The Commissioner is not required for any given year to allow a tax benefit permitted for a previous or subsequent year. <u>See, e.g.</u>, <u>Lerch v. Commissioner</u>, 877 F.2d 624, 627 n.6 (7th Cir. 1989), <u>aff'g</u> T.C. Memo. 1987-295; <u>Pekar v. Commissioner</u>, 113 T.C. 158, 166 (1999).

For these various reasons we sustain respondent's determination disallowing petitioner's claimed qualified residence interest deduction with respect to the Hermosa Beach property for 2015.

## III. Accuracy-Related Penalty

In the notice of deficiency respondent determined that for 2015 petitioner is liable for a $1,469 accuracy-related penalty under section 6662(a) as a result of "one or more" of the following: (1) negligence or disregard of rules or regulations, (2) a substantial understatement of income tax, (3) a substantial valuation misstatement, or (4) a transaction lacking economic substance. In this proceeding, respondent argues only that petitioner is liable for a substantial understatement penalty under section 6662(b)(2). We deem respondent to have conceded that petitioner is not liable for any other accuracy-related penalty under section 6662(a).

[*27] Under section 7491(c), respondent bears the burden of production with respect to any accuracy-related penalty under section 6662(a). This burden of production includes the burden of producing evidence establishing that "the initial determination of such assessment * * * [of the penalty was] personally approved (in writing) by the immediate supervisor of the individual making such determination" as required by section 6751(b)(1), unless a statutory exception applies. See Frost v. Commissioner, 154 T.C. ___, ___ (slip op. at 20-21) (Jan. 7, 2020); Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). This Court has held that the "initial determination" occurs no later than when "proposed adjustments are communicated to the taxpayer formally as part of a communication that advises the taxpayer that penalties will be proposed and giving the taxpayer the right to appeal them with Appeals". Clay v. Commissioner, 152 T.C. 223, 249 (2019); see also Belair Woods, LLC v. Commissioner, 154 T.C. ___, ___ (slip op. at 24-25) (Jan. 6, 2020) ("[T]he 'initial determination' of a penalty assessment * * * is embodied in the document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties.").

**[\*28]** To meet his burden of production with respect to the supervisory approval requirement of section 6751(b), respondent relies exclusively on a notation in a one-page stipulated exhibit captioned "Correspondence Examination Automation Support", dated April 25, 2018. On this document in a single line entry dated September 6, 2017, with an indication that it was "Submitted by" an otherwise unidentified "Brodnax Felicia L" and with an indication that the "Action Type" is (mysteriously) "Non Action", the "Note" states in its entirety: "6662 penalty approved". Without any other supporting evidence or explanation or elaboration, on brief respondent argues that this document "reflects the timely managerial approval of the accuracy-related penalty." Respondent's position is problematic for a variety of reasons.

In Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. 75, 87 (2019), this Court stated: "Although the title of section 6662 refers to a (singular) 'penalty', section 6662 imposes various distinct penalties, each subpart of which must be separately approved for purposes of section 6751(b)(1)." The document upon which respondent relies, stating "6662 penalty approved", does not expressly show approval of the substantial understatement penalty imposed under section

**[\*29]** 6662(b)(2).[10]  Moreover, respondent has not established which Internal

Revenue Service (IRS) employee made the initial determination of any accuracy-

related penalty, who that IRS employee's immediate supervisor was, or that the

penalty was approved timely in writing by that immediate supervisor.  Respondent

has not argued and the record does not establish that the penalty is subject to any

exception, such as the exception for calculation through electronic means pursuant

to section 6751(b)(2)(B).  Cf. Walquist v. Commissioner, 152 T.C. 61, 70 (2019)

(holding that where "the penalty was determined mathematically by a computer

software program [through the Automated Correspondence Exam system] without

the involvement of a human IRS examiner, * * * the penalty was 'automatically

calculated through electronic means,' sec. 6751(b)(2)(B), as the plain text of the

statutory exception requires").[11]

---

[10]Nor for that matter does it expressly show approval of any of the other "one or more" penalties determined in the notice of deficiency as imposed under sec. 6662(b)(1) (negligence or disregard of rules or regulations), sec. 6662(b)(3) (substantial valuation misstatement), or sec. 6662(b)(6) (transaction lacking economic substance).

[11]The determination in the notice of deficiency that petitioner's claimed mortgage interest deduction with respect to the New York City property should be moved from his 2015 Schedule A to his 2015 Schedule E strongly suggests the involvement of a human IRS examiner.

[*30] Respondent has failed to meet his burden of production with respect to the accuracy-related penalty under section 6662(a) and (b)(2) for a substantial understatement of income tax. Accordingly, having deemed respondent to have conceded imposition of an accuracy-related penalty on any other ground, we do not sustain respondent's determination of the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a).